792 A.2d 448 (2002)
348 N.J. Super. 442
Robert MENAKE, Plaintiff-Respondent/ Cross-Appellant,
v.
Janice MENAKE, Defendant-Appellant/ Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 6, 2002.
Decided February 22, 2002.
*449 Nickolas E. Nasuta, Oradell, attorney for appellant/ cross-respondent.
Christine Farrington, Hackensack, attorney for respondent/ cross-appellant.
Before Judges CONLEY, LEFELT and LISA.
The opinion of the court was delivered by CONLEY, P.J.A.D.
This is an appeal arising from a post-matrimonial dispute over defendant's entitlement to a portion of plaintiff's defined-benefit pension that he has with the New York State and Local Retirement System as a result of his employment with the Port Authority of New York and New Jersey. It is a dispute that has spanned eight years with four different judges and numerous court applications and orders, two different Qualified Domestic Relations Orders (QDRO) and several recalculations by the New York State and Local Retirement System. It is the formula for the calculation of defendant's share of plaintiff's pension in the second of the two QDROs that prompts this appeal. By order entered April 1, 1996, defendant's share was to be determined by a formula which consisted of the "[n]umber of months of marriage of the parties while in *450 the retirement systems divided by total number of months in retirement systems multiplied by 50%...." In contrast, a March 27, 2000, order directed that defendant's share be determined by a formula which consisted of "50% of the hypothetical retirement allowance, computed using final average salary as of May 14, 1990, and the service credit accrued between July 9, 1973, and May 14, 1990." The latter dates reflect the duration of the parties' marriage to the date of the filing of the divorce complaint. The differences in these two formulas is significant. Indeed, because the Retirement System had made a number of payments to defendant under the first order, the effect of the March 27, 2000, order was a recalculation, which resulted in a $93,809.92 overpayment. In order to repay this amount, defendant will receive no pension benefits until July 30, 2012. We reverse and remand for further proceedings.
We do not recite the tortured procedural course this dispute has taken before finding its way here. Only several salient facts need be considered. The first is that when the judgment of divorce was entered on August 21, 1992, plaintiff was not then retired. Defendant was awarded fifty percent of his pension, with distribution deferred until his retirement. Thus, although at the time defendant had an expert who had arrived at a "present-day" value for the purposes of a buy-out calculation, the judge chose not to accept that valuation and, instead, opted for deferred distribution of fifty percent of that marital asset. The final judgment of divorce, therefore, provided in part as to plaintiff's pension:
Plaintiff's pension, which has not yet been liquidated, shall be the subject of a qualified domestic relations order with fifty percent to plaintiff and fifty percent to defendant. The amount to be distributed by way of a qualified domestic relation order shall be from the period when plaintiff commenced his employment until the divorce complaint was filed, plus accumulated interest thereon.
Defendant, then, was awarded a deferred share of plaintiff's pension, to begin upon plaintiff's retirement. The formula for determining that deferred share would, by now, seem to be fairly well-accepted in our equitable distribution jurisprudence, at least where, as here, the spouse participates in a defined-benefit plan.[1] That formula utilizes what is frequently referred to as the "coverture fraction." Risoldi v. Risoldi, 320 N.J.Super. 524, 543, 727 A.2d 1038 (App.Div.), certif. denied, 161 N.J. 335, 736 A.2d 528 (1999); Reinbold v. Reinbold, 311 N.J.Super. 460, 466-67, 710 A.2d 556 (App.Div.1998). See Whitfield v. Whitfield, 222 N.J.Super. 36, 48, 535 A.2d 986 (App.Div.1987). We explained the process in Whitfield:
The spouse's percentage share is ascertained through a two-step process. The first step is to factor out that portion of the pension attributable to the marriage. This factoring involves the application of a fraction. The numerator of the fraction is the period of pension plan participation during the marriage and the denominator is the total period of plan participation necessary to the receipt of *451 benefits. This sounds more complicated than it is. In this case the includable fraction is 16/20thsthe number of years the parties were married during which defendant accrued pension credits over the total number of years necessary for the pension to be received. The second step is to determine the percentage to which the spouse is entitled applying the standards established in Painter [v. Painter, 65 N.J. 196, 320 A.2d 484 (1974) ]. Here, the figure to be applied if and when the pension is received would be expressed as follows: spouse's entitlement = × % of 16/20ths of the pension.
[Id. at 48, 535 A.2d 986.]
We further explained the calculation to be used when there occurs a deferred distribution in Reinbold v. Reinbold, supra, 311 N.J.Super. 460, 710 A.2d 556:
In such a scheme the actual numerator of the coverture fraction is fixed (here at 28 years, the period of the marriage during which defendant worked for Sandoz up to the filing of the complaint). The denominator is also fixed at the number of years in all that defendant will have worked as of retirement. Obviously, the number itself cannot be supplied until retirement. The longer the employee spouse works, the larger the denominator, thus reducing the non-employee spouse's percentage share and assuring the employee spouse the benefits of his or her post-divorce labors. In general, "the non-employee spouse will receive a decreasing percentage of an increasing benefit." William M. Troyan, Pension Evaluation and Equitable Distribution, 10 Fam. L. Rep. 3001, 3007 (1983). Thus, in this case, as the parties agree, if defendant had actually worked 35 years until age 62, plaintiff would have been entitled to
28 (employment during coverture) × Benefit × 50%
________________________________
 35 (years actually worked)
[Id. at 466-67, 710 A.2d 556 (emphasis added).]
Here, as we have said, this is a deferred distribution case. For reasons that the record does not reflect, a QDRO was not entered simultaneously or shortly after the final judgment of divorce, even though that judgment called for a QDRO. It is for that reason, we presume, that when plaintiff retired in May 1994 and began to receive his pension, defendant's deferred distribution was not activated as a QDRO is necessary for the retirement system to distribute a portion of a retiree's benefit to another. 29 U.S.C.A. § 1056(d)(3)(A) and (B); Risoldi v. Risoldi, supra, 320 N.J.Super. at 532, 727 A.2d 1038. When, finally, the first QDRO, dated April 1, 1996, was entered, it referred to a formula "devised in the case of Majauskas v. Majauskas, 61 N.Y.2d 481, 474 N.Y.S.2d 699, 463 N.E.2d 15 (1984)...."described as "[n]umber of months of marriage of the parties while in the retirement systems divided by total number of months in retirement systems multiplied by 50% equals [defendant's adjudicated share]." Although reference is made to New York case law, as we understand the formula set forth in that case law, it utilizes the same "coverture fraction" we have concluded is key to a deferred distribution calculation under our law.
It is the "coverture fraction," of course, which limits the spouse's entitlement to the duration of the marriage. Nonetheless, pointing to the language in the August 21, 1992, final judgment that "[a]ny pension benefits earned subsequent to the date of the divorce complaint ... plaintiff is entitled to retain solely as his," and to the fact that at the date of his retirement, plaintiff's salary was substantially higher primarily because of post-divorce *452 overtime work he had performed, plaintiff successfully convinced the trial court that the first QDRO was in error. The March 27, 2000, order containing a formula that utilized a "hypothetical retirement allowance, computed using final average salary as of May 14, 1990 and the service credit accrued between July 9, 1973 and May 14, 1990," was, thus, entered in place of the prior order. The legal problem with this order is that it, albeit after the fact of retirement,[2] utilizes a present-day value formula for what was a deferred distribution benefit. As we have said, the present-day valuation formula, which discounts the value of the pension to the date of the filing of the complaint, is only to be used "when there are sufficient other marital assets against which to offset the non-pensioner's equitable distribution interest in the pension, or sufficient income available to facilitate a reasonable buy-out of the non-pensioner spouse's interest." Risoldi v. Risoldi, supra, 320 N.J.Super. at 539, 727 A.2d 1038 (quoting Whitfield v. Whitfield, supra, 222 N.J.Super. at 50, 535 A.2d 986). See Kikkert v. Kikkert, 177 N.J.Super. 471, 477-78, 427 A.2d 76 (App.Div.), aff'd o.b., 88 N.J. 4, 438 A.2d 317 (1981). That was not possible at the time of the final judgment of divorce and, thus, "the deferred-distribution method must be employed." Risoldi v. Risoldi, supra, 320 N.J.Super. at 539, 727 A.2d 1038. Moreover, usually when the present-day value of a pension is determined so as to effectuate a buy-out or to offset other marital assets, the pension benefit is valued as of the date of retirement and then discounted to determine present value. The March 27, 2000, order did not even do that, as it fixed a value of a "hypothetical pension" as of the date of the divorce complaint.
It is perhaps helpful at this point to recall the rationale we have employed in determining future pension benefits in the marital distribution mix. In Whitfield v. Whitfield, supra, 222 N.J.Super. 36, 535 A.2d 986, in the context of a military pension which had neither "vested" nor "matured," we rejected the notion the pension was not "earned" or "acquired" until retirement date, explaining that the "earning" occurs during the marital years:
Defendant claims that this pension will not be "earned" until the 20th anniversary of his entry into the service and that that will be the day it was "acquired" for includability purposes. If we were to accept this superficial analysis as a bar to the inclusion of this significant asset in the marital estate, we would be paying lip service to the theory of equitable distribution while ignoring the reality before us. These parties were married for sixteen years during which time they experienced all of the joys and sorrows of married life. They raised three children. It is uncontroverted that they labored, shoulder to shoulder in the military, establishing homes and supporting their family, both financially and emotionally, all over the world. During the entire marriage, defendant was accumulating credits toward his pension which both parties anticipated he would receive [four years post divorce]. Clearly, this pension will not be earned on the 20th anniversary of defendant's entry into the service. Rather, it was earned during each and every day of his 20 years of employment in the military, 16 years of which *453 were spent in a "shared enterprise" with plaintiff.... Both of these parties contributed to the earning of defendant's pension rights by their participation in the marriage, and both justifiably expected to share the future enjoyment of the pension benefits which represent a significant part of the marital estate:
The important expectations attached to this asset by both husband and wife cannot be overstated. They involve, after all, the fundamental belief by both spouses that their mutual security in later years will be protected by pension benefits. They also involve an assumption of interdependence and wealth-sharing that has almost certainly been held jointly by both husband and wife during their years of marriage. [Bonavich, "Allocation of Private Pension Benefits as Property in Illinois Divorce Proceedings," 29 DePaul L.Rev. 1, 16 (1979).]
[Id. at 45-46, 535 A.2d 986 (emphasis added).]
As we there said "[t]he includability of property in the marital estate does not depend on when, during the marriage, the acquisition took place [but] depends solely on the nature of the interest and how it was earned." Id. at 47, 535 A.2d 986. Where a pension is awarded on a deferred distribution basis, the nature of the sharing spouse's interest is in the value of the pension benefits as of the date of distribution, not some hypothetical value as of the date of the divorce complaint.
Our recent decision in Linek v. Korbeil, 333 N.J.Super. 464, 755 A.2d 1229 (App. Div.), certif. denied, 165 N.J. 676, 762 A.2d 657 (2000), may be helpful in illustrating the point. There, at the time of the parties' 1981 final judgment of divorce, the trial judge calculated a present-day value of defendant's pension and then fixed a specific monthly payment that was to begin upon defendant's future retirement. The decision does not reflect how the value of the pension was determined in arriving at a fixed monthly amount, distribution of which was deferred until defendant's actual retirement. But what it does reflect is that upon that retirement, defendant's actual monthly benefits were far in excess of those calculated under the original judgment. Whether that was the product of a higher average salary upon retirement or increase in the value of the pension itself is not clear. But we affirmed a 1999 order which, (1) granted plaintiff's motion to correct a previously entered QDRO premised upon the original judgment and (2) required compliance with the 1999 actuarial analysis offered by plaintiff's expert. It is not entirely clear from the decision what the basis of that actuarial analysis was, but it is fairly evident that the formula used was the deferred distribution formula set forth in Whitfield v. Whitfield, supra, 222 N.J.Super. at 48, 535 A.2d 986. In affirming this valuation and rejecting the original "fixed amount" valuation, we said:
[P]laintiff's actuarial analysis posits a pension value at the time of defendant's retirement far in excess of the valuation proffered at the time of the divorce trial.... The trial court came to rely upon the valuation then before it in framing its judgment-of-divorce determination distributing the pension, a provision which was improperly specific in establishing a dollar amount to be paid to plaintiff at some future date. It is of no consequence whether the valuation disparity which eventually became evident came about because an error was made in the pension valuation submitted to the court at the time of the divorce trial, or whether it was the result of market forces that produced extraordinary growth in the value of the pension asset in the interim, a factor that obviously *454 could not have been predicted at the time of trial.
[Linek, 333 N.J.Super. at 472, 755 A.2d 1229.]
We saw "an ambiguity" in the 1981 judgment of divorce in its "defining plaintiff's interest as a fixed amount." Ibid. We explained:
Although the then-present value of the pension, and plaintiff's percentage share of that asset at the time by application of the coverture fraction, could well have been correctly determined, there was no way the judge or anyone else could have known what the value of the pension, and therefore plaintiff's fractional interest, was to be some years in the future, whether defendant retired at age sixty-five as then anticipated or came to opt for an earlier retirement, as he actually did.
[Id. at 472-73, 755 A.2d 1229 (emphasis added).]
We, thus, concluded that "[t]he trial court at the time of the judgment of divorce was simply unwarranted in fixing a dollar amount payout for plaintiff's share of the deferred pension asset at such time in the future as it would come into pay status. All that was authorized ... was the award of a percentage allocation of the asset between the parties, to be applied whenever the pension came into pay status." Id. at 475, 755 A.2d 1229 (emphasis added).
The fact that the deferred distribution formula, in part, utilizes the actual amount of the pension benefit upon retirement, i.e., its future value including post-divorce work efforts, does not necessarily require a different result. We recognize that the matrimonial judge in 1992 specifically protected from any award to defendant future work efforts on the part of plaintiff. But there is no suggestion here that plaintiff did not retain for his own use all of the extra salary he earned post-divorce. Moreover, the judge's comments, insofar as they pertain to the value of the pension, do not state anything other than what is commonly understood to occur where distribution is deferred and is the rationale for application of the "coverture fraction." Moore v. Moore, 114 N.J. 147, 166, 553 A.2d 20 (1989) (recognizing that only post-retirement cost-of-living increases are includable in equitable distribution of spouse's pension and that application of "coverture fraction" removed "post-divorce" cost-of-living increases from the award).
As we observed in Risoldi v. Risoldi, supra, 320 N.J.Super. at 544-45, 727 A.2d 1038, in rejecting a similar argument, "[a]pplication of the coverture fraction, applied at the time the benefits convert to pay status at retirement, will assure defendant maintains the fruits of his post-divorce labor. When the denominator of the coverture fraction increases with the increasing number of years defendant is enrolled in the [retirement] plan, a lower coverture fraction is used to compute plaintiff's [deferred share]." Ibid. See Reinbold v. Reinbold, supra, 311 N.J.Super. at 466-67, 710 A.2d 556. We further said in Risoldi:
This reasoning is in accord with that of other jurisdictions. In In re Marriage of Kelm, 912 P.2d 545, 549 (Colo.1996), a defined-benefit pension valuation and distribution case, the husband argued that application of the "time rule" formula 2 improperly permitted the wife to share in his enhanced pension benefits attributable to his post-dissolution efforts and in benefits calculated on the basis of his post-dissolution earnings. In rejecting the husband's argument, the Colorado Supreme Court stated, in relevant part:
Husband's attempt to freeze the value of the pension at the time of *455 dissolution and at the same time reap the rewards of deferred distribution is patently unfair to the wife, who must wait to receive her share. Similarly, husband's proposed present day valuation of his pension based upon his continued employment until the thirty-year mark is irrelevant if the deferred distribution method is used.
[Id. at 550, 727 A.2d 1038.]
We are in accord with this reasoning.
2 The "time-rule" formula incorporates a "coverture fraction," which comprises a numerator, the length of time of creditable service in the pension system during the marriage, over the denominator, the length of total creditable pension service. The coverture fraction is then divided, usually in half, to reflect the division of the pension benefits attributable to the marriage.
[Risoldi v. Risoldi, supra, 320 N.J.Super. at 541, 727 A.2d 1038.]
We thus reverse the March 27, 2000, order in that it directed utilization of a formula for determining defendant's share in plaintiff's benefits based upon a "hypothetical retirement" as of the date of the divorce complaint. On the record before us, the correct formula must utilize the "coverture fraction" applied to plaintiff's benefits valued as of the date of his retirement.
We add two caveats. The first relates to the type of pension plaintiff received. Although not focused upon by the parties, the record is fairly clear that plaintiff first retired with a service pension. Apparently he had applied for an accidental disability pension and two years later in 1996 that was granted. His pension benefits were recalculated and increased. Whether defendant has a right to share in this higher amount is questionable. See Avallone v. Avallone, 275 N.J.Super. 575, 583-84, 646 A.2d 1121 (App.Div.1994). However, the parties have not raised the issue. Moreover, as in Avallone, the record is insufficient for us to resolve it. We cannot, for instance, discern whether the disability pension was the product of some disability that had its genesis in some accident or condition that occurred or developed during the marriage or whether it was the product of a post-marriage accident. We do not know, further, whether there is a separate accidental disability component to plaintiff's benefits which can be separated from service related benefits. We leave these issues to the remand, should the parties choose to raise them.
The second caveat concerns plaintiff's claim that a substantial part of the value of his actual pension benefits is attributable solely to extraordinary, overtime work efforts he engaged in post-divorce. We recognize that where the issue is present-day value, we have held that anticipated post-divorce pre-retirement cost-of-living salary increases should not be used in the valuation method. Hayden v. Hayden, 284 N.J.Super. 418, 424, 665 A.2d 772 (App.Div.1995). We there said:
With the current spate of salary freezes or even reductions in lieu of layoffs throughout government and industry, it is difficult for this court to establish a general rule that if a particular company or industry grants a pay raise to its workers, the portion of such raise up to the annual increase in cost-of-living should automatically be deemed not due to the workers' efforts. Often, raises are not computed with cost-of-living in mind, but rather reflect a measure of profit sharing, a reward for diligent work. In other situations, a contract may provide for a cost-of-living increase in addition to increases for merit. But even in these cases, such increases are bargained for and are granted *456 by the employer based upon the employer's assessment of the employees' collective or individual worth. The fact that a company's employees have merited a cost-of-living increase for work performed after a divorce does not warrant the former spouse's sharing in such an increase.
Alternatively, an industry or governmental unit may ostensibly grant a cost-of-living increase, irrespective of the merit of the employees' collective efforts. We are told that historically such increases have been given to the State Police and some other public employees. Yet to insure even these benefits, the bargaining agent of the public employees trades off other benefits such as increased raises based upon years of service, merit increases or the like. With each year's contract, a new balance is struck. Thus, the employee's post-divorce efforts, although on a collective basis, have occasioned even a regular cost-of-living increase. We, therefore, reject the inclusion of anticipated post-divorce, pre-retirement cost-of-living increases in valuing defendant's pension.
[Id. at 423-24, 665 A.2d 772.]
As we understand this analysis, our concern, in part, was that such cost-of-living increases are, at best, speculativesometimes depending upon work effort and service, some times not. On the other hand, in Moore v. Moore, supra, 114 N.J. 147, 553 A.2d 20, another present-day valuation case, the trial judge included future salary increases in his present-day valuation and we affirmed. Id. at 153, 154, 553 A.2d 20. The Supreme Court did not address the issue as it was not raised by way of a cross-petition. Id. at 158 n. 4, 553 A.2d 20. But in Risoldi v. Risoldi, supra, 320 N.J.Super. 524, 727 A.2d 1038, we approved Colorado's rejection of the pensioner's argument that the "time rule" (similar to our "coverture fraction") "improperly permitted the wife to share in his enhanced pension benefits and in benefits attributable to his post-dissolution efforts calculated on the basis of his post-dissolution earnings." Id. at 541, 727 A.2d 1038.
Under the existing law as we understand it, the deferred distribution valuation formula utilizes the value of the pension as of the date of retirement. That value will necessarily reflect, to some degree, post-divorce work efforts. Thus far, we have considered the "coverture fraction" as sufficient to carve out the marital value of the asset and have not required that the value of the benefits as of the date of retirement be analyzed to determine, and subtract out, any enhancement due to post-divorce work effort. We do not foreclose that possibility in the event, on remand, the parties choose to pursue this issue and establish an appropriate record. Can, for instance, such enhancement be mathematically determined and factored out? Perhaps more importantly, can it be shown that the post-divorce enhancing factors, i.e., here, the alleged extraordinary overtime, are entirely unrelated to plaintiff's prior years of service? If, for instance, seniority were a dispositive factor in his ability to obtain the overtime, it would seem that would be future enhancement of the marital efforts for which it could be said both spouses looked forward to. If only partially a factor, can the post-divorce service efforts be mathematically extracted? Additionally, did plaintiff work overtime during the marital years such that enhancement of his pension benefits by post-divorce overtime efforts could have been anticipated and, therefore, would become part of the expected "future enjoyment" of the marital asset? We leave it to the parties, should they chose to, to flesh these issues out upon remand and to develop *457 the factual record needed for a cogent resolution.
Finally, we find no merit to plaintiff's claim of untimeliness of the appeal. As to his cross-appeal, not only is there no order denying counsel fees but, given our disposition of the appeal, the cross-appeal is moot.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Under the Employment Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001 to 1461, employee pension plans are subject to a number of standards. 29 U.S.C.A. § 1001(b). Under ERISA, employee retirement plans fall into two categories: 1) defined benefit plans; and 2) defined-contribution plans. 29 U.S.C.A. § 1002(35). The New York State and Local Retirement System is a defined-benefit pension plan where the employer agrees to pay a specified monthly or annual benefit at retirement calculated in accordance with a formula contained in the plan.
[2] Obviously, the entries of the QDROs at issue here and the resulting calculations of defendant's share of plaintiff's benefits occurred after plaintiff retired and, thus, no longer were, technically, "deferred." But the award itself was at a time when distribution was deferred. We do not think the procedural posture of this case should cause our analysis to change.