793 A.2d 34 (2002)
349 N.J. Super. 55
Frederick CLARKE, Plaintiff-Appellant,
v.
Barbara CLARKE, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 2002.
Decided March 8, 2002.
*35 Lawrence D. Forster, Ledgewood, argued the cause for appellant (Forster & Arbore, attorneys; Mr. Forster, on the brief).
Benjamin P. DeSena, Wayne, argued the cause for respondent (Benjamin P. DeSena, attorney; Patricia M. Petro, on the brief).
Before Judges PETRELLA, KESTIN and ALLEY.
The opinion of the court was delivered by KESTIN, J.A.D.
The parties' marriage was dissolved in a dual judgment of divorce following a trial which concluded on July 30, 1999, with the judge's oral decision. The judgment of divorce was not entered until February 22, 2000, however. On March 1, 2000, plaintiff moved for reconsideration [*] of the amount of alimony and of defendant's entitlement, by way of equitable distribution, to any portion of plaintiff's Tier II pension benefits under the Railroad Retirement Act, 45 U.S.C.A. §§ 231 to 231v. Plaintiff appeals from the trial court's order disposing of that motion.
The trial court held a plenary hearing to develop further facts bearing upon the alimony issue, and the judge delivered an oral opinion on August 7, 2000. He found that there had been a curtailment in plaintiff's overtime to the extent that an alimony reduction was warranted from $1,700 to $1,200 per month retroactive to the date the motion for reconsideration was filed. The issue had revolved about the amount *36 of overtime available to and logged by plaintiff in his work for New Jersey Transit as a train car inspector. Plaintiff contended before the trial court and reasserts on appeal that the income figure used to establish the amount of alimony was overstated because the amount of overtime available to him had significantly diminished from the substantial amount he worked on an annual basis during the marriage. He contended further, with supporting testimony from a supervisor, that the reduction was due to job-related changes beyond plaintiff's control and that the availability of overtime was likely to remain diminished or even lessen further in the foreseeable future.
Plaintiff argues that the trial judge misapplied his discretion in establishing the initial $1,700 alimony figure, that he erred in the post-judgment plenary hearing by ruling plaintiff could not inquire further concerning defendant's economic circumstances, and that the alimony adjustment should have been retroactive to the date of the trial court's orally rendered decision in the initial trial rather than to the date of the motion for reconsideration. Our review of the record in the light of the parties' written and oral arguments discloses ample basis in the evidence before the judgeat the times he made his discretionary determinations both in the initial trial and on reconsiderationfor the evaluative decisions he made. We are bound to give substantial deference to those decisions, see Cesare v. Cesare, 154 N.J. 394, 411-13, 713 A.2d 390 (1998), as long as support can be found for them in the record before the court at the time each decision was made. See Rolnick v. Rolnick, 262 N.J.Super. 343, 355-59, 621 A.2d 37 (App.Div.1993).
Regarding some specific arguments plaintiff makes, it was not incumbent upon the judge to make the future projections contended for by plaintiff; rather it was appropriate for the decisions to be made based upon actual experience in the most recent periods available. As the judge clearly indicated in rendering his decision at the time of divorce, plaintiff is not barred from changed circumstances applications in the future.
It was also within the judge's discretion, in addressing plaintiff's earning capacities, to employ as a benchmark the amount of time plaintiff had devoted to his work during the marriage and to expect him to continue working at that level. Also, the judge did not err in precluding further inquiry into defendant's economic circumstances during the plenary hearing on the reconsideration motion. The parties had had ample opportunity to address those questions during the divorce trial. As questions raised on a motion for reconsideration, the factual issues considered were quite properly limited to plaintiff's overtime. Moreover, we discern no error in the judge's income averaging techniques or the data he used. Plaintiff's assertion of an error respecting his 1995 income is meritless. That year was not considered by the trial judge in striking an average income for the three years preceding the trial: 1996, 1997, and 1998.
Finally, there was no discretionary lapse in setting the effective date of the retroactive alimony adjustment. The initial alimony amount had been fixed based upon the evidence then available and developed; the reduced amount followed from expanded showings based on updated information. Each ruling was correct at the time articulated in the sense of being based on the showings made to the date of decision; the alimony reduction ordered essentially paralleled the diminution of income by reason of reduced overtime as shown in the plenary hearing.
*37 For the foregoing reasons, we affirm those provisions of the order under review dealing with plaintiff's alimony obligations.
In the remaining issue raised on appeal, plaintiff contends that "[t]he court's determination that defendant is entitled to a one-half share of plaintiff's Tier II pension through his employer ... by qualified domestic relations order at the time of pay status pursuant to the Miller decision is improper." Regarding equitable distribution of his pension rights, plaintiff had moved the trial court to "reconsider the dual judgment of divorce with respect to awarding defendant any portion of plaintiff's Tier II benefit under the Railroad Retirement Act." The judgment of divorce provides:
3. The plaintiff is also the owner of a Tier II pension through his employer, New Jersey Transit. A qualified domestic relations order shall be entered by which the defendant/counterclaimant shall receive her one-half share ... from the amount of the benefit at [the] time [the pension] enters into pay status, pursuant to the Miller decision.
In ruling on the motion to reconsider the pension distribution, the judge declined to modify the judgment of divorce in that respect, but provided in the order under appeal:
4. If there are additional benefits available for distribution associated with Tier [II] or any other supplemental benefits, 50% of these sums which were acquired during the marriage [are] to be calculated and distributed in accordance with Miller and in compliance with the Code of Federal Regulations.
In his oral disposition of this aspect of the motion for reconsideration, the judge stated:
The other issue that was raised is the tier situation, which, quite frankly, was not clear by anybody, and I don't think it makes any difference.
I made a determination about the equitable distribution of his retirement benefits when they go into pay status. My ruling is that I'm not changing that. If, in fact, there is additional monies as a result of Tier 2 or supplemental, the same ruling applies. However, it's conditioned upon compliance with federal law, and I'm going to require that any orders are in compliance with the government Form G-177D-1187 or updated.
You're invited to [sic] Paragraphs 2, 3, and several subparagraphs, and a model paragraph of the decree is on Page 5 in the back. And you are directed in here to look at the CFRs that deal precisely with divorced parentsdivorced railroad employee spouses as to what they may or may not get. The only difference in the order is, under Miller, whatever percentage she's entitled to is when it goes to pay status, as I've ruled before.
Now whether there is a difference or not a difference or if he gets a supplemental or he doesn't get a supplemental, to me is only a question of whether the benefits are given. If the benefits are there, they're there.
I am not sure that this is not controlled entirely by federal law because, apparently, there was a Supreme Court case that said, under no circumstances could any state court issue any order. That's been changed now by federal law. But the Code of Federal Regulations, which I'm going to mark as Court's Exhibit C-1, seems to set forth the areas counsel should look to and the language that counsel should use.
* * *
And I just want to make it clear that if federal law prohibits the proposed invasion, *38 if we can call it an invasion, or payment of Tier 2 or the supplemental, so be it. I can't do this.
But there seemed to be great confusion as to whether this was any different than just a different name. If it isn't, the real question here is: Is there benefits paid by it? If there isn't, a percentage of zero is zero. I just want to make sure that if it is paid, she gets her share for the time that was accumulated during coverture, and we went through that in the main decree. But here it is a rather clear road map as to what she's entitled to.
Now, in addition, in looking atfor which I'm not making a ruling, but, in addition, I notice there are separate benefits that apparently can be paid to a divorced spouse with a number of conditions that are not related to equitable distribution-type [sic] in other sections. So someone ought to take a look at that because she may be entitled to some other railroad benefit. And it has a host of prerequisites that may not bemay not make her eligible.
In so ruling, the judge did not dispose correctly or adequately of the issues raised.
To begin with, incorporation of the standards of Miller was impermissible. Miller v. Miller was a case previously disposed of by the very same judge in an unpublished opinion. It involved issues bearing upon the distribution of pension rights not yet in pay status. The judge had ruled on the question, dealing with the conceptual issues involved in his unpublished written opinion. He entered an order establishing the framework for distributing the pension benefits and requiring that the plaintiff "submit an appropriate conforming equitable distribution order (CEDRO) in accordance with this opinion." No such order had been entered, however. On the pension-holder's appeal, we held, also in an unpublished opinion:
The order of January 14, 1997 is not a final disposition of the matter at issue. To the extent the opinion on which it is based articulates a basic standard to be used in determining the respective parties' equitable distribution interests in a pension that is not yet in pay status, there has been no resolution, by entry of a CEDRO or otherwise, of how the very pension at issue is to be distributed. There has been no particularized application of the standards embodied in the opinion, including coverture fraction principles, and no discriminating determination of the extent to which considerations relating to active/passive growth affect the parties' rights in this case. Without an order establishing the effect upon the parties of the standards articulated in the January 24, 1997 opinion, emanating from whatever further proofs, if any, the trial court may determine the parties are entitled to present, the order appealed from must be seen as interlocutory. See R. 2:2-3; R. 2:5-6.
We accordingly dismissed the appeal.
This appeal has many of the same deficiencies we noted in Miller. Essential issues were left unaddressed, including that the trial court did not establish the parties' respective fractional shares in the pension or a formula for calculating them. Thus, a CEDRO or other order directing the distribution of the pension could not be prepared here, either.
Moreover, it was manifestly incorrect for the trial judge to cite his unpublished opinion in Miller as authority, see R. 1:36-3, let alone to rely upon its principles as dispositive of the issues in this case. The prohibition in R. 1:36-3 against using unpublished opinions as precedent applies to the deciding court's own opinions as well as those of other tribunals.
*39 In order for this matter to be fully disposed of, it will be necessary for the trial court to resolve all issues bearing upon the parties' respective entitlements to the pension, including any special considerations arising from federal law and taking fully into consideration prevailing principles of State law as established by statute, see N.J.S.A. 2A:34-23h; -23.1, and in authoritative caselaw, see, e.g., Moore v. Moore, 114 N.J. 147, 553 A.2d 20 (1989); Hayden v. Hayden, 284 N.J.Super. 418, 665 A.2d 772 (App.Div.1995); see also Menake v. Menake, 348 N.J.Super. 442, 792 A.2d 448 (App.Div.2002); Risoldi v. Risoldi, 320 N.J.Super. 524, 727 A.2d 1038 (App.Div.); certif. denied, 161 N.J 335, 736 A.2d 528 (1999); Reinbold v. Reinbold, 311 N.J.Super. 460, 710 A.2d 556 (App.Div.1998).
The trial court's disposition of the alimony issues is affirmed. As to the pension distribution issues, the appeal is dismissed as interlocutory and the matter is remanded to the trial court for further reconsideration and fuller disposition.
NOTES
[*] We view as erroneous the trial judge's ruling that the motion for reconsideration was untimely as measured from the date of his oral disposition of the divorce complaint. See Pressler, Current N.J. Court Rules, comment on R. 4:49-2 (2001)("[O]nly a signed order... triggers the running of the time period."). Despite this view, the judge nevertheless considered the application as one for a modification by reason of changed circumstances. We regard the matter to be as presented by plaintiff, a motion for reconsideration.