824 A.2d 283 (2003)
361 N.J. Super. 158
Marilyn FAULKNER, Plaintiff-Appellant/Cross-respondent,
v.
Lawrence FAULKNER, Defendant-Respondent/Cross-appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 2003.
Decided June 11, 2003.
*284 Edward J. Bowen, River Edge, argued the cause on behalf of appellant.
Jay Rubenstein, Hackensack, argued the cause on behalf of respondent (Shapiro & Croland, attorneys; Barry L. Baime, of counsel; Mr. Rubenstein, on the brief).
Before Judges KING, WEFING and LISA.
The opinion of the court was delivered by WEFING, J.A.D.
The parties appeal and cross-appeal from certain aspects of the judgment of *285 divorce entered by the trial court on November 2, 2001. Their dispute is concentrated primarily on the manner in which the trial court handled their respective pension rights.

I
Because of the issues presented, it is necessary to set forth the parties' work history in some detail. The parties were married in March 1973 and have three children, two of whom are emancipated. The youngest, Emily, is now fourteen and the parties share joint custody. Both are attorneys admitted to practice in New York State where they resided until moving to New Jersey in 1997.
Defendant received his undergraduate degree in 1965, following which he held several different positions as a New York State employee before enrolling in law school. The result of that employment was that he accrued 2.7 years of credit in the New York State Pension System. He was not working for New York State when the parties were married, however, but was enrolled in law school. Between 1974 and 1982, after finishing law school, he had a part-time teaching position with the state university system in the Buffalo area and held a variety of legal positions. In 1982 the parties moved to Albany and defendant began a full-time position with the New York State Office of Mental Retardation and Developmental Disabilities. As a result of his state employment, he was a participant in the New York State Pension System. Defendant was terminated from state employment, effective in January 1997, at which point he was fifty-three years old.
New York's pension system for state employees distinguishes between what is referred to as a Tier 1 pension and a Tier 3 pension. To qualify for a Tier 1 pension, one had to be employed by the State prior to 1973. An individual who qualified for a Tier 1 pension did not have to contribute toward his or her pension and could retire, with full benefits, at age fifty-five. Tier 3 participants, on the other hand, had to contribute a certain percentage of their salary toward their pension and had to wait to age sixty-two before being able to retire with full benefits.
At the time of defendant's termination, New York State had implemented a program to encourage individuals in the Tier 1 program to retire early. In light of defendant's years of service, he was allowed to participate in this program. Defendant was credited with the additional years of service he would have completed if he were fifty-five, and a discount of ten percent was applied to reflect his current age. Defendant was allowed to retire on full pension as thus calculated. When defendant took this retirement opportunity, the parties discussed between themselves how defendant should take his pension and they agreed that defendant should take the maximum monthly benefit, without a survivor provision. The result is that defendant, commencing in 1997, began to receive a monthly pension of $2,936.09 from New York State.
Defendant did not remain inactive, however. In April 1997 he secured a position as counsel to the Westchester Association of Retired Citizens, in which he earns $84,900 annually.
Plaintiff worked as a teacher at the time the parties were married. She stayed home for some time with the couple's first two children and then entered law school in 1978. When plaintiff completed law school, the family moved to Albany. She also obtained a position working with the State of New York and became a participant in the State's pension system. However, because she had not worked for the *286 State prior to 1973, she could not qualify as a Tier 1 participant.
When the family moved to New Jersey in July 1997, plaintiff left her position with New York State but her pension credits remained intact. Plaintiff was able to obtain a position as a federal administrative law judge, hearing appeals within the Social Security system. She earns $114,756 in that capacity and is also participating in a federal pension program. At the time of trial, she was fifty-three years old and anticipated working until sixty-five.
The parties separated shortly after they moved to New Jersey. They agreed between themselves on the distribution of all their assets except for their respective pensions. Plaintiff asserted she was entitled to a share of defendant's New York State pension, computed on the basis of a coverture fraction. Defendant asserted that the pension, because it was in pay status, was income, and thus not subject to equitable distribution at all. He also contended that if plaintiff was entitled to any portion of his pension, its enhanced value due to his Tier 1 status should be exempt from distribution because it resulted from pre-marital employment. Defendant also claimed entitlement to a share of plaintiff's pension, for it was based upon work performed during the marriage. Finally, defendant asserted that he could not maintain himself in the manner in which the parties lived during their marriage (there was no dispute that the cost of living in Bergen County, New Jersey was higher than in Albany, New York) and thus sought alimony.
Following trial, the court concluded that defendant's pension was subject to equitable distribution but that plaintiff was not entitled to share in its enhanced Tier 1 value but only in what defendant would have received if he had retired as a Tier 3 pensioner. The court also concluded that defendant was entitled to share in plaintiff's New York State pension once she reached the age of fifty-five, when she could first claim it. It rejected defendant's claim for alimony and the parties' claims for counsel fees.
Both parties have appealed. Plaintiff asserts the trial court erred in distributing a "hypothetical" pension and in ordering her to commence collecting her New York State pension at age fifty-five, rather than waiting to age sixty-five, when she could collect a higher benefit. She also contends the trial court used the incorrect date in valuing defendant's pension and erred in treating her legal education as an asset. Finally, she claims the trial court erred in denying her counsel fees.
This latter issue is easily disposed of, in our judgment. In light of the respective incomes of the parties, there was no abuse of discretion in denying counsel fees. Plaintiff contends an award of counsel fees was appropriate because defendant's argument that his pension was not subject to equitable distribution because it was in pay status was put forth in bad faith. Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971). We disagree, particularly in light of the trial court's earlier pendente lite determination that defendant's pension would be treated as income.

II
We turn then to plaintiff's arguments on the distribution of defendant's pension. "The evaluation and equitable distribution of pensions presents troublesome challenges to litigants, practitioners and judges in matrimonial cases." Risoldi v. Risoldi, 320 N.J.Super. 524, 531, 727 A.2d 1038 (App.Div.1999). The importance of a fair and equitable distribution of pension assets is particularly important because pension benefits often "represent a *287 significant part of the marital estate." Menake v. Menake, 348 N.J.Super. 442, 449, 792 A.2d 448 (App.Div.2002) (quoting Whitfield v. Whitfield, 222 N.J.Super. 36, 45-46, 535 A.2d 986 (App.Div.1987)). We have, in the past, had the occasion to address the proper method of dealing with post-judgment conduct and post-retirement actions in connection with the distribution of pensions. See, e.g., Linek v. Korbeil, 333 N.J.Super. 464, 755 A.2d 1229 (App.Div.2000) (addressing the impact upon distribution of a pension of a spouse's retirement at a date earlier than contemplated when the judgment of divorce was entered); Hayden v. Hayden, 284 N.J.Super. 418, 665 A.2d 772 (App.Div.1995) (addressing pension increases due to post-judgment salary increases of the employed spouse). Here, by contrast, we deal with the impact of defendant's pre-marital employment. Nonetheless, principles articulated in those cases provide guidance here.
The pension benefits of an employed spouse are subject to equitable distribution when they are related to the joint efforts of the parties. "Because employee pensions often are accrued by the parties' joint efforts during the marriage, pension benefits paid after divorce can be equitably distributed." LaSala v. LaSala, 335 N.J.Super. 1, 9, 760 A.2d 1122 (App.Div. 2000). Thus, the Supreme Court has concluded that routine post-retirement cost-of-living adjustments to a pension are an integral part of the pension benefit to which the parties' joint efforts contributed and are subject to equitable distribution. Moore v. Moore, 114 N.J. 147, 151, 553 A.2d 20 (1989). Pension increases due to post-judgment efforts of the employed spouse entirely unrelated to the prior service, on the other hand, are not subject to such distribution. Menake v. Menake, supra, 348 N.J.Super. at 454, 792 A.2d 448; Hayden v. Hayden, supra, 284 N.J.Super. at 424, 665 A.2d 772.
Generally, the coverture fraction is the appropriate tool to utilize in attempting to determine an appropriate allocation of spouses' respective interests in a pension. "The coverture fraction is the proportion of years worked during the marriage to total number of years worked." Eisenhardt v. Eisenhardt, 325 N.J.Super. 576, 580, 740 A.2d 164 (App.Div.1999). The numerator of the fraction is the period during the marriage in which the employed spouse participates in the pension plan and the denominator of the fraction is the total period of time in which the spouse participates in the plan.
The coverture fraction insures that the equitable distribution pot includes only that portion of the working spouse's labor which constitutes a "shared enterprise."
It also assures the employee spouse the benefits of his or her pre and post coverture labors.
[Id. at 581, 740 A.2d 164.]
We are most often called upon to apply the fraction to account for post-judgment employment, to assure an allocation that is equitable to both parties. "The longer the employee spouse works, the larger the denominator, thus reducing the non-employee spouse's percentage share and assuring the employee spouse the benefits of his or her post-divorce labors." Reinbold v. Reinbold, 311 N.J.Super. 460, 466-67, 710 A.2d 556 (App.Div.1998). Plaintiff asserts that the same principle is fully applicable in the case of pre-marital employment, as here, and would serve equally to achieve an appropriate balance between the respective contributions of the parties to the overall pension received. We disagree.
The increase in value to defendant's pension is not simply the result of his having *288 worked for New York State for an additional 2.7 years. The increase in value is the result of when he worked for New York State, that is, prior to 1973. The coverture fraction is properly utilized to determine a spouse's correct proportional interest when the length of employment is a factor in assessing pension rights. The length of defendant's employment, however, is fundamentally irrelevant to his status as a Tier 1 pensioner; the critical factor is when the employment commenced, not how long it lasted.
The trial court correctly perceived this critical distinction and correctly calculated plaintiff's distributive share.

III
We turn to the remaining issues of plaintiff's appeal. The date of valuation used for equitable distribution of all the marital assets was December 1, 1997, save for defendant's pension, for which the trial court selected the date of October 1, 2001. Plaintiff claims this was error, and that she should receive a share of defendant's pension retroactive to December 1, 1997.
We do not agree. The trial court correctly recognized that defendant's pension checks were an income stream which had been used to support the family unit and to meet their living expenses. Defendant's pension income was, moreover, used in calculating defendant's child support obligations. As a result, plaintiff has already benefitted from defendant's monthly pension benefits. To give her a retroactive lump sum distribution of that pension would give her a share of the same funds twice.
Plaintiff asserts that the trial court treated her legal education as an asset, contrary to Stern v. Stern, 66 N.J. 340, 345, 331 A.2d 257 (1975). Plaintiff, however, misreads the trial court's opinion. Appeals, moreover, are taken from judgments, not opinions. Credit Bureau Collection Agency v. Lind, 71 N.J.Super. 326, 328, 177 A.2d 36 (App.Div.1961).
We earlier noted that plaintiff, as a result of her own employment by New York State, had accrued certain pension rights. Plaintiff wished to defer taking that pension until she reached the age of sixty-five, at which time she would presumably be entitled to a higher monthly benefit. Defendant objected, contending it was not fair that plaintiff share in his pension but defer receipt of hers into the future, perhaps completely depriving him of any portion. The judgment entered by the trial court ordered plaintiff to "elect to receive her pension at age 55 without survivorship benefits." Within its opinion, the trial court provided that if it were not possible for plaintiff to do so, the parties could file post-judgment motions for relief.
Plaintiff reached the age of fifty-five while this appeal was pending. No stay was sought as to that provision within the judgment and we were informed at oral argument that plaintiff had, upon reaching fifty-five, begun to receive her New York State pension. Because this provision of the judgment has been fully implemented, we consider plaintiff's challenge to the trial court's authority to enter such an order to be moot. If any adjustments are warranted as a result of plaintiff's pension achieving pay status, the parties may file appropriate post-judgment motions with the trial court.

IV
We turn now to defendant's cross-appeal, in which he raises two issues. He contends that if we determine the trial court lacked the authority to order plaintiff to elect to receive her New York State pension at age fifty-five, then his share of *289 her pension should be credited against her share of his pension. We need not address this argument in light of the manner in which we handled plaintiff's appeal on this question. Finally, he urges that if we make any changes in the distributions ordered by the trial court, the entire matter be remanded to the trial court for a complete reallocation of all issues, including his claim for alimony. Because we have not ordered any changes, the issue is moot. R. 2:11-3(e)(1)(A).
The judgment is affirmed and the cross-appeal is dismissed as moot.