NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2300-12T2

KATHLEEN KRUPINSKI,
n/k/a KATHLEEN GOCKLIN,

    Plaintiff-Respondent/
Cross-Appellant,

v.

MICHAEL KRUPINSKI,

    Defendant-Appellant/
Cross-Respondent.

_____

> APPROVED FOR PUBLICATION
>
> **September 2, 2014**
>
> **APPELLATE DIVISION**

Argued May 21, 2014 — Decided September 2, 2014

Before Judges Fuentes, Fasciale and Haas.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FM-19-352-90.

John V. McDermott, Jr., argued the cause for appellant/cross-respondent.

Chris H. Colabella argued the cause for respondent/cross-appellant (Gruber, Colabella & Liuzza, attorneys; Mr. Colabella and Kristen C. Montella, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Defendant Michael Krupinski appeals from the order of the Family Part denying his motion to terminate his obligation to

pay permanent alimony to his former wife, plaintiff Kathleen Krupinski, n/k/a Kathleen Gocklin. Plaintiff cross-appeals the court's decision to deny her application for an award of counsel fees incurred defending defendant's motion. After reviewing the record before us, we hold the Family Part mistakenly exercised its discretion when it denied defendant's motion to terminate alimony without affording the parties discovery and thereafter determining whether an evidentiary hearing was warranted.

Defendant's motion requires the trial court to address and answer one key question it did not address in denying defendant's motion to terminate alimony in 2010 and again in 2012. Specifically, the court must discern what part of the $1,871 monthly pension benefits plaintiff has been receiving since defendant's retirement in 2010 is attributable to defendant's post-dissolution efforts, and thus may be considered income to plaintiff for purposes of determining alimony, outside the bar imposed in N.J.S.A. 2A:34-23(b). The trial court erred in denying defendant's motion without making this threshold determination.

We thus remand for the Family Part to enter a case management order to afford the parties the right to engage in limited discovery to ascertain each other's current financial status, including medical and social needs. We leave the

precise method and scope of discovery to the discretion of the trial court. We suggest, however, that the judge confer with counsel and thereafter enter a case management order limiting the form of discovery to written interrogatories, requests for admissions, production of documents, and updated Case Information Statements (CIS) supported by copies of filed income tax returns for the past three years. At the conclusion of discovery, and after consultation with counsel, the court will then be in a position to determine whether it is necessary to conduct an evidentiary hearing to resolve any factual issues in dispute.

I

The parties were both twenty-two years old when they married in 1968, and had two children who are both emancipated adults. They separated twenty years later on October 24, 1988. With the assistance of independent counsel, they negotiated and entered into a comprehensive property settlement agreement (PSA) that covered all of the key issues associated with the dissolution of marriage, including child support, the cost of college education for the children, and most relevant here, alimony, and equitable distribution. The PSA was incorporated by the court to the final judgment of divorce (JOD) dated June 27, 1990.

Defendant was a public school teacher at the time the parties separated in 1988, earning an annual salary of $45,798.28. He was enrolled in the Public Employment Retirement System (PERS). With respect to the equitable distribution of defendant's pension benefits, Paragraph 14 of the PSA provided in relevant part as follows:

> It is agreed that at such time as the Husband starts to draw his pension, the Wife shall be entitled to one-third of each of the periodic pension payments made to the Husband. The Husband further agrees to execute such qualifying domestic relations order [QDRO] as may be necessary to direct the organization administering the pension to make the Wife's one-third share of each pension payment directly to the Wife.

At the time the court entered the JOD in 1990, the PERS recognized defendant had accumulated nineteen years and eleven months of service as a public school teacher. The QDRO, which for reasons not disclosed in the record was not filed until October 5, 2000, provided, in relevant part, for the Division of Pension and Benefits

> to withhold from [defendant']s gross monthly retirement allowances for equitable distribution payments to [plaintiff] an amount to be computed by multiplying the gross monthly retirement allowances by Fifty Percent (50%) and a coverture fraction in which the numerator will be the total number of years that the spouses were married while the member was a member of the retirement system (from September 1, 1969 to July 21, 1989 or 19 Years 11 Months), and the

4

denominator will be stated to be the total years of service credit accrued within the retirement system at the time of retirement. After payments commence to the Alternate Payee, they shall continue until the death of the Participant or the Alternate Payee.

The Alternate Payee shall receive a pro-rata share of any cost of living adjustments or other economic improvements made to the Participant's retirement allowance on or after the date of his retirement. Such pro-rata share shall be calculated in the same manner as the Alternate Payee's share of the Participant's gross monthly retirement allowance is calculated pursuant to Section 2 above.

Defendant was sixty-four years old when he retired on April 1, 2010. He had accumulated forty-one years and five months of service in the PERS. Of particular importance here, defendant continued his education after the parties separated, and was promoted to an administrative position, resulting in a significant increase in salary. The Division of Pensions and Benefits calculated his retirement benefits based on an annual salary of $132,210.97, nearly three times the $45,798 salary he was making as a teacher when he separated from plaintiff.

With respect to alimony, Article II, Paragraph 4 of the PSA obligated defendant to pay plaintiff $100 per week, the equivalent of $430 per month ($100 X 4.3 weeks), subject to termination only upon plaintiff's death, remarriage, or cohabitation "with an individual to whom she is not related by

blood or marriage." No provision was made for any adjustment of alimony based on an increase in the cost of living. Plaintiff accepted this arrangement without protestation until defendant filed his second motion seeking to terminate his alimony obligation. Stated differently, defendant paid plaintiff a total of $113,520 in alimony over a period of twenty-two years without any cost of living adjustments and without objection from plaintiff.

According to defendant, he did not keep in contact with plaintiff after the divorce. He does not know anything about her personal life, including whether she was employed on a fulltime basis, what kind of work she performed, or if she has cohabitated with a person other than a family member. The only communication defendant received from plaintiff after 1990 came in the form of a letter dated June 9, 2009, which stated:

> Dear Michael:
>
> I hear you are retiring this month. Congratulations!! I hope you enjoy it as much as I have been enjoying it even though I do work 2 days a week to keep my mind sharp and for the socialization.
>
> I am writing to inquire about what your plans are regarding your pension. The pension of which I am entitled to a portion. It is my understanding that I will start receiving my portion when you start to collect your portion.

Please advise me as to what needs to happen
or what is happening concerning my portion.

Thank you.

Kathy

In a certification plaintiff filed in opposition to the motion to terminate alimony filed by defendant in 2012, plaintiff made clear that when she decided to retire in 2008, she "reviewed [her] finances to be sure I could afford to do so before [she] made that final decision." That review included alimony of $430 per month from defendant, as it was agreed in the original divorce settlement of 1990 that she would receive alimony until she died, remarried or cohabited, and she had "done none of these."

Conspicuously, yet understandably missing from plaintiff's careful review of her finances in anticipation of retirement, was any mention or reliance on her equitable distribution share of defendant's pension benefits. This omission makes it clear that plaintiff's share of defendant's pension benefits was not a factor in her carefully considered decision to retire in 2008.[1]

---

[1] We characterize this omission by plaintiff as understandable because when she would start receiving her share of defendant's pension, and the dollar amount of that share, were factors totally and exclusively within defendant's control. That is, because defendant was not compelled to retire at any particular age, he and he alone would choose when to retire. Furthermore, the amount of defendant's monthly pension benefits, including

(continued)

A-2300-12T2

Defendant's retirement automatically triggered plaintiff's right to receive her coverture share of defendant's PERS pension benefit. Defendant began receiving his monthly pension payments on May 1, 2010. In a letter dated April 22, 2010, the Division of Pensions and Benefits explained to defendant that based on the distribution formula described in the QDRO, he would receive $5,929.90, resulting in a monthly benefit payment to plaintiff in the amount of $1,871.

Defendant filed his first motion seeking to terminate his alimony obligation to plaintiff in April 2010. In a Statement of Reasons attached to the order denying defendant's motion, the judge, who was not the same judge who entered the order under review here, noted that plaintiff objected, claiming her gross income for the year 2009 was $18,282. Although plaintiff did not break down the source of this income, the judge found that she received $430 per month from defendant in alimony, and $205 per week in Social Security benefits. These two sources of income amount to $10,760 per year. We thus infer that before she began receiving her share of defendant's pension, plaintiff earned $7,522 per year from undisclosed employment.

_____

(continued)
plaintiff's share, would be based on defendant's years of service and his annual salary on the date of retirement.

After acknowledging the standard applicable for modification of spousal support under N.J.S.A. 2A:34-23 and the Court's seminal decision in Lepis v. Lepis, 83 N.J. 139, 145 (1980), the judge found that "[o]n this record, defendant has proven that his retirement constitutes a change of circumstances." The judge nevertheless found "critical" defendant's failure to disclose his income in 1990 or provide "a description of the marital lifestyle in 1990. Cf. Weishaus v. Weishaus, 180 N.J. [131], 145 (2004)."[2]

Based on an alleged inconsistency between what defendant expected to receive from his pension, the judge found the record was "unclear" as to what his actual income would be after retirement. Despite these factual misgivings and alleged inconsistencies, the judge found "clear" that "defendant will

_____

[2] The motion judge's contrasting reference to Weishaus for the proposition that the parties' failure to have determined their marital lifestyle at the time of their divorce, created an insurmountable impediment to the adjudication of defendant's motion seeking modification of spousal support was misplaced. Indeed, as Justice LaVecchia explained in Weishaus, supra, the Court was relaxing what some perceived was an inflexible directive in Crews v. Crews, 164 N.J. 11, 26 (2000), requiring a determination of the marital lifestyle, even in settled cases. 180 N.J. at 134. The Court in Weishaus thus wanted to make clear that "[a] trial court may forego the findings [of a marital lifestyle] when the parties freely decide to avoid the issue as part of their mutually agreed-upon settlement, having been advised of the potential problems that might ensue as a result of their decision." Id. at 144.

continue to be able to pay expenses, including alimony obligation, following his retirement."

## II

Defendant waited two years before attempting to once again seek judicial relief from his obligation to pay alimony. This time, however, defendant presented two years of retirement history to a different judge. The record before the judge in 2012 showed that after plaintiff began receiving her share of defendant's pension benefits, her annual gross income increased from $18,282 in 2009 to $40,734 in 2010. In his decision in support of his August 12, 2012 order denying defendant's second motion for termination of alimony, the judge found that "[o]n this record, and as noted on the previous record, defendant's retirement constitutes changed circumstances."

The judge also noted that defendant had addressed the issue raised by the previous judge in 2010 by submitting evidence of "his 1990 marital lifestyle." This evidence includes copies of the tax returns filed by the parties from 1988 to 1990, the three years immediately preceding their divorce, and a detailed certification from defendant. We can reasonably describe this evidence as substantial. If accepted as truthful, defendant established through these documents that from 1968 to 1988, the parties enjoyed a "frugal, modest" marital lifestyle.

As an appellate court, it is not our function to weigh evidence or determine defendant's credibility. The trial judge must carefully review and evaluate this evidence and determine first whether there is a basis to dispute defendant's account of his life with plaintiff or question his socio-economic characterization of their lifestyle. If there are disputes about these and other issues, the judge must conduct an evidentiary hearing and make detailed factual findings supported by the record. Many of these findings will require the judge to make credibility determinations based on the judge's personal assessment of the parties' testimony. The tools necessary to carry out this charge are uniquely available to the trial judge. Only the trial judge "has the opportunity to make first-hand credibility determinations about the witnesses who appear on the stand. . . [and] has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. R.G & J.G., 217 N.J. 527, 552 (2014) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

After reviewing defendant's financial status, the motion judge denied defendant's motion to terminate alimony because he found that defendant "is still able to pay his alimony obligation." Defendant argued that the PSA created a reasonable

expectation that his alimony obligation would end upon his retirement. In rejecting defendant's argument, the judge accepted at face value plaintiff's claim "that there was never any discussion or debate at the time of the original divorce as to alimony ending when [defendant] retired and his income changed." This clearly constitutes a disputed issue of fact concerning what may or may not have been anticipated or discussed that cannot be resolved without an evidentiary hearing.

The motion judge principally relied on defendant's financial condition after retirement to deny his motion to terminate alimony. Although the judge found defendant's retirement created "changed circumstances," he concluded defendant was still financially able to pay alimony. This conclusion, however, overlooks the second part of the analysis: whether plaintiff's financial status has improved to such an extent upon receiving defendant's share of his PERS pension, that she no longer needs alimony from defendant to maintain her former marital lifestyle. This is the central thesis of defendant's argument. However, in concluding that defendant remains capable of paying alimony, the motion judge did not adequately address this issue.

A-2300-12T2

N.J.S.A. 2A:34-23(b) provides that: "When a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider income generated thereafter by that share for purposes of determining alimony." This legislative injunction codified an earlier decision reached by the Chancery Division in D'Oro v. D'Oro, 187 N.J. Super. 377 (Ch. Div. 1982), aff'd, 193 N.J. Super. 385 (App. Div. 1984), which held that income flow from a pension cannot be considered as income for alimony modification purposes if the value of the marital asset had previously been equitably distributed by the court. That took place here in the form of a QDRO.

Although there was some initial ambiguity about whether this legislative injunction in N.J.S.A. 2A:34-23(b) was intended to apply to modification of alimony, the Supreme Court settled that question in Innes v. Innes, 117 N.J. 496, (1990), holding that the statute applied "to both initial alimony orders and modifications of earlier alimony awards." Id. at 508. The Court also made clear that the Legislature intended that the statute preclude "double-dipping," that is, the practice of counting the pension as both an asset subject to equitable distribution and income. Ibid.

However, what can be considered "income" for purposes of deciding a motion for alimony modification, or in this case termination, in the context of pension benefits and the bar imposed by the Legislature in N.J.S.A. 2A:34-23(b), is a question that has not been directly answered. Here, defendant argues that his pension benefits increased significantly as a result of his post-divorce efforts to continue his education and training, which led to his promotion to high school administrator. Thus, defendant argues the motion judge was required to identify which portion of his pension shared by plaintiff was a joint effort of the parties during the marriage, and which part was due to defendant's post-divorce efforts.

We agree with defendant. As we recently noted in Barr v. Barr, 418 N.J. Super. 18, 41 (App. Div. 2011):

> [T]here are some extraordinary post-judgment pension increases that may be proven to be attributable to post-dissolution efforts of the employee-spouse, and not dependent on the prior joint efforts of the parties during the marriage. In such instances, these sums must be excluded from equitable distribution and the application of the coverture fraction may be insufficient to accomplish this purpose.

What part of a pension benefit is barred from consideration under N.J.S.A. 2A:34-23(b) and what part can be considered "income" for purposes of modification of alimony is not an easy determination. In Bednar v. Bednar, 193 N.J. Super. 330 (App.

14                                              A-2300-12T2

Div. 1984), we considered the legal and equitable implications when a marital asset increases in value pending the entry of a final order settling its distribution. Writing for the panel, our colleague Judge King held that "accretion in value must be analyzed in terms of whether it was attributable to the personal industry of the party controlling the asset, apart from the non-possessory partner, or simply to fortuitous increase in value due merely to inflation or other economic factors." Id. at 333 (internal citations omitted). We faced a similar dilemma in Wadlow v. Wadlow, 200 N.J. Super. 372 (App. Div. 1985), and again endorsed Judge King's approach in Bednar as a guiding principle:

> [A]n increase in value caused by market factors or inflation and an enhancement which is the result of the "personal industry of the party controlling the asset" [are different]. We held [in Bednar] that "interim accretions pending actual distribution due to the diligence and industry of a party in possession of an asset, independent of identifiable market forces," should accrue to that person alone. However, where the enhanced value is attributable to market factors or inflation, "each party should share equitably in the increment."
>
> [Id. at 384 (quoting Bednar, supra, 193 N.J. Super. at 333).]

The case that comes closest by analogy to the situation we confront here is Menake v. Menake, 348 N.J. Super. 442 (App.

Div. 2002). The issue in <u>Menake</u> concerned the valuation of a deferred distribution pension, similar to the one the parties share here. Writing for the panel, our colleague Judge Conley gave the following summary of the deferred distribution valuation formula:

> Under the existing law as we understand it, the deferred distribution valuation formula utilizes the value of the pension as of the date of retirement. That value will necessarily reflect, to some degree, post-divorce work efforts. Thus far, <u>we have considered the "coverture fraction" as sufficient to carve out the marital value of the asset and have not required that the value of the benefits as of the date of retirement be analyzed to determine, and subtract out, any enhancement due to post-divorce work effort</u>. <u>We do not foreclose that possibility in the event, on remand, the parties choose to pursue this issue and establish an appropriate record.</u> Can, for instance, such enhancement be mathematically determined and factored out? Perhaps more importantly, <u>can it be shown that the post-divorce enhancing factors, i.e., here, the alleged extraordinary overtime, are entirely unrelated to plaintiff's prior years of service</u>? If, for instance, seniority were a dispositive factor in his ability to obtain the overtime, it would seem that would be future enhancement of the marital efforts for which it could be said both spouses looked forward to. If only partially a factor, can the post-divorce service efforts be mathematically extracted? Additionally, did plaintiff work overtime during the marital years such that enhancement of his pension benefits by post-divorce overtime efforts could have been anticipated and, therefore, would become part of the expected "future enjoyment" of

the marital asset? We leave it to the parties, should they chose to, to flesh these issues out upon remand and to develop the factual record needed for a cogent resolution.

[Id. at 454. (Emphasis added).]

Using these principles as a guide, the trial court here is required to determine what Judge Conley in Menake called the "post-divorce enhancing factors." Defendant alleges he can establish that, but for his educational and professional training that led to his promotion to an administrative position and other "post-divorce enhancing factors," plaintiff's share of his retirement benefit would be $665 as opposed to $1,871, a difference of $1,206. As the party seeking the elimination of alimony, defendant has the burden of proof.

Stated differently, in order for defendant to prevail in his motion to terminate his permanent alimony obligation, he must prove that: (1) $1,206[3] of the $1,871 plaintiff is receiving as her equitable distribution share of his pension is the result of defendant's post-divorce efforts that enhanced the value of

---

[3] We use $1,206 without prejudice to plaintiff's right to challenge the validity of this figure before the trial court. We also emphasize that, as the party seeking to eliminate his alimony obligation, defendant has the burden of proving that this or any other figure qualifies as "income" to plaintiff and thus falls outside of the bar in N.J.S.A. 2A:34-23(b), as it quantifies the enhanced value of the pension resulting from his post-divorce efforts.

his overall pension benefits; (2) this $1,206 is "income" to plaintiff and outside the scope of N.J.S.A. 2A:34-23(b); and (3) as a result of this additional "income," plaintiff will be able to live and enjoy a lifestyle equal to, or better than, the marital lifestyle she enjoyed while married to defendant, without the $100 per week permanent alimony defendant has paid to her for the past twenty-two years.

## III

In conclusion, we reverse the order of the Family Part denying defendant's motion seeking to terminate his permanent alimony obligation to plaintiff and remand for the court to enter a case management order establishing a discovery schedule. At the conclusion of discovery, the court shall confer with counsel and determine whether there are material issues of fact in dispute warranting an evidentiary hearing. The order of the court awarding plaintiff an increase in alimony based on the rise of the cost of living since 1990 is vacated without prejudice pending the outcome of defendant's motion to terminate alimony. The order of the court denying plaintiff's motion for an award of counsel fees is likewise affirmed without prejudice pending the outcome of defendant's motion to terminate alimony.

Reversed and remanded on defendant's appeal. Affirmed without prejudice on plaintiff's cross-appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-2300-12T2