284 N.J. Super. 418 (1995)
665 A.2d 772
KEVIN J. HAYDEN, PLAINTIFF-APPELLANT,
v.
JULIA C. HAYDEN (NOW CONNOLLY), DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1995.
Decided October 16, 1995.
*419 Before Judges DREIER, ARNOLD M. STEIN and KESTIN.
Kevin J. Hayden argued the cause pro se.
Ann R. Bartlett argued the cause for respondent (Alexander & Bartlett, attorneys, Ms. Bartlett, on the brief).
The opinion of the court was delivered by DREIER, P.J.A.D.
Plaintiff husband appeals from the economic provisions of the parties' amended judgment of divorce. His appeal principally calls into question the equitable distribution of the parties' pensions, and especially the application of pension valuation principles.
The parties were married March 2, 1974. Plaintiff filed for divorce in March 1992 and defendant counterclaimed in April 1992. Defendant wife worked for a short time, but left her job when she became pregnant with the couple's first child. Pursuant to the parties' joint wishes, defendant remained at home during most of the marriage to raise the children, although she was sporadically employed on a part-time basis.
*420 At the time of the trial, held in the spring of 1993, the parties' children were sixteen, fifteen, and thirteen years of age. Defendant was then employed full-time as a personal banker, grossing just under $17,000 per year.[1]
Plaintiff husband had entered the New Jersey State Police Academy approximately two weeks after the parties were married and has risen to the rank of Lieutenant. He has also been an adjunct professor at Seton Hall University, although he was not so employed at the time of trial. Plaintiff's 1992 net income from the New Jersey State Police was $64,166.37, and he earned an additional salary of $3,500 from Seton Hall University. Plaintiff claimed, and it does not appear to be disputed, that his actual annual salary for 1992 was $61,400 including a maintenance allowance and that the difference between this sum and the amount shown on his W-2 form was explained by back pay for a 1991 promotion. His 1993 tax liability was estimated at $10,846 for federal taxes and $2,432.61 for state taxes. As there was no alimony ordered, these income figures would not be adjusted to reflect any tax considerations due to alimony.
*421 All information concerning defendant's pension under the State Police Retirement System was before the court. At the time of the complaint, plaintiff was forty-three years old and had accrued approximately 17.74 years of service in his retirement plan. Plaintiff contributed seven and one-half percent of his gross taxable income to the pension system. He expected to retire, as do most State Police officers, at the age of fifty-five. At that time he would be entitled to a pension amounting to two percent of salary in his last year of employment multiplied by the number of years of service. The benefits, however, are increased at twenty years of service and twenty-five years of service. At plaintiff's retirement at the age of fifty-five with over thirty years of service, he would qualify for a pension of approximately seventy percent of final compensation. He is not entitled to Social Security benefits for his employment by the State Police, but he can accrue such benefits for outside employment or for employment following his retirement.
In valuing this pension, defendant's expert estimated that plaintiff would receive seventy percent of his final year's salary or approximately $38,934. He included in this estimate an average annual salary increase until retirement of 3.2 percent based upon inflation and made no reductions for tax consequences or calculations for plaintiff's lack of Social Security benefits. Based on these criteria, he valued the pension at $188,290, less any outstanding loan.
Plaintiff's expert also valued plaintiff's pension to age fifty-five but did not use future salary increases for the thirteen years after the marriage until retirement. Based upon Pennsylvania authority, he reduced the current pension valuation by $26,160.38, representing Social Security benefits plaintiff would have received had he been enrolled in Social Security. He did not consider that plaintiff may be entitled to Social Security through other jobs he has held during his State Police career, or may hold following retirement. Based upon these premises, plaintiff's expert valued *422 the pension at $106,162.81, approximately $82,000 less than defendant's expert.
In the dual judgment of divorce entered October 5, 1993, the parties were granted joint legal custody of their children, with residential custody awarded to defendant. There was no award of alimony, and child support was set at $1,800 per month.[2] The court also directed distribution of property and responsibility for the parties' debts. The court accepted defendant's valuation of plaintiff's pension, thus rejecting plaintiff's net valuation of $106,162.81 (or $132,323.18 if the Social Security adjustment were not made). The judge determined that he was required by Moore v. Moore, 114 N.J. 147, 553 A.2d 20 (1989) to adjust the pension for post-divorce salary increases. He also found that there should be no adjustment for Social Security. Defendant received forty-five percent of the pension or $84,730.50, less payment of a pension loan. This sum was partially taken as a credit against plaintiff's share of the net proceeds from the sale of the marital home, $38,230.03[3] plus interest, and through payments of $500 per month with interest, totaling $44,823.15.
The parties agree that pensions are considered property acquired during the marriage and are subject to equitable distribution. Kruger v. Kruger, 73 N.J. 464, 468, 375 A.2d 659 (1977). Plaintiff contends, however, that future salary increases should not be included in the valuation of his pension even insofar as these *423 salary increases are estimated solely at the inflation rate and represent the historical cost-of-living increases that have been given to employees of the State Police each year during plaintiff's employment. The trial judge determined that he was bound by Moore v. Moore, supra, to include these amounts. This issue, however, was expressly left open in Moore v. Moore. See 114 N.J. at 158 n. 4, 553 A.2d 20 (citing out-of-state authorities holding that post-judgment cost-of-living increases "unlike future salary increases do not result from the personal, individual efforts of the employee spouse"). Moore v. Moore held only that "future post-retirement cost-of-living increases payable to pensioners under the New Jersey Police and Firemen's Retirement system (NJPFRS) qualifie[d] as marital property subject to equitable distribution." 114 N.J. at 151, 553 A.2d 20 (emphasis added). Such salary increases are available to pensioners in New Jersey under the Pension Adjustment Act, N.J.S.A. 43:3B-1 through 43:3B-10. Such post-retirement increases are as much a part of the pension as the amounts initially established by the pension system on retirement and merely adjust the pension payments for the then current real value of the dollar. There is therefore no dispute concerning the required inclusion of post-retirement cost-of-living increases. The judge, however, was incorrect in determining that Moore v. Moore requires the inclusion of the cost-of-living component of any pre-retirement salary increases in a pension valuation.
With the current spate of salary freezes or even reductions in lieu of layoffs throughout government and industry, it is difficult for this court to establish a general rule that if a particular company or industry grants a pay raise to its workers, the portion of such raise up to the annual increase in cost-of-living should automatically be deemed not due to the workers' efforts. Often, raises are not computed with cost-of-living in mind, but rather reflect a measure of profit sharing, a reward for diligent work. In other situations, a contract may provide for a cost-of-living increase in addition to increases for merit. But even in these cases, such increases are bargained for and are granted by the employer based upon the employer's assessment of the employees' collective *424 or individual worth. The fact that a company's employees have merited a cost-of-living increase for work performed after a divorce does not warrant the former spouse's sharing in such an increase.
Alternatively, an industry or governmental unit may ostensibly grant a cost-of-living increase, irrespective of the merit of the employees' collective efforts. We are told that historically such increases have been given to the State Police and some other public employees. Yet to insure even these benefits, the bargaining agent of the public employees trades off other benefits such as increased raises based upon years of service, merit increases or the like. With each year's contract, a new balance is struck. Thus, the employee's post-divorce efforts, although on a collective basis, have occasioned even a regular cost-of-living increase. We, therefore, reject the inclusion of anticipated post-divorce, pre-retirement cost-of-living increases in valuing defendant's pension.
On remand, the trial court shall recompute the value of plaintiff's pension, excluding the cost-of-living increases from the date of the filing of the complaint through the date of retirement.[4]See Pascale v. Pascale, 140 N.J. 583, 609, 660 A.2d 485 (1995); Brandenburg v. Brandenburg, 83 N.J. 198, 209, 416 A.2d 327 (1980).[5]
*425 Plaintiff next attacks the failure of the trial judge to adjust the pension valuation for the taxes he will pay when its benefits are received. We reject this claim. See Stern v. Stern, 66 N.J. 340, 348, 331 A.2d 257 (1975); Orgler v. Orgler, 237 N.J. Super. 342, 356, 568 A.2d 67 (App.Div. 1989).
We likewise reject plaintiff's assertion that the trial judge should have adjusted the value of the pension for Social Security benefits that plaintiff is not entitled to receive as a member of the State Police. White v. White, 284 N.J. Super. 300, 303-07, 664 A.2d 1297, 1298-1300 (Ch.Div. 1995). It is true that Social Security benefits are non-assignable, 42 U.S.C.A. § 407, and thus are not considered marital property subject to equitable distribution. But the fact that plaintiff will not receive Social Security benefits (and concomitantly has not been required to pay social security contributions) does not mean that plaintiff will not actually receive Social Security benefits upon retirement based upon other employment either during his State Police career or thereafter. We reject the out-of-state authority cited by plaintiff to the contrary. Cornbleth v. Cornbleth, 397 Pa.Super. 421, 580 A.2d 369 (1990), appeal denied, 526 Pa. 648, 585 A.2d 468 (1991); and Endy v. Endy, 412 Pa.Super. 398, 603 A.2d 641 (1992).
Plaintiff next asserts that the payout of the pension at $500 per month as ordered by the court, even after he has given up his interest in the proceeds of the sale of the marital home, leaves him with only $753.94 per month on which to live. Also, the judge's order for annually compounded interest on the unpaid portion at the judgment rate further lowers plaintiff's available income. On remand, the recomputation of the pension may adjust the figures originally ordered by the court. The court on remand might also consider extending the payment period or otherwise adjusting the payments if the court determines that the effect of the payments is not being equitably borne by each of the parties.
*426 Defendant additionally contends that if there is a remand, the issue of alimony might be revisited. Defendant did not appeal, but here contends that if her equitable distribution is reduced, she may need to seek alimony. The judge properly considered that defendant would be receiving the pension money, child support and money from the sale of the home in addition to her salary.
Lastly, plaintiff objects to the computation and allocation of the child support payments. Given the various figures presented by plaintiff concerning his pay, it is difficult for us to assess whether or not the trial judge was correct.
Plaintiff's State Police maintenance allowance should have been included in the calculations only if it provided him with additional funds to maintain himself so that he could expend his salary for other purposes. If it merely provided him with lodging when away from home or other such expenses, it would not be includable. The description of this allowance was sparse at best, although it apparently returned over $7,000 to plaintiff in 1992. Again, we cannot determine whether the judge included this figure or not. Of course, the retroactive pay increase added to the 1992 W-2 form was not continuing income upon which support could be computed. Plaintiff also contended that he could not continue his teaching at Seton Hall because the class hours were not available. Yet, the judge did not consider whether plaintiff could teach at another college or university and make up the $3,500 or more income that he had enjoyed in the past.
We cannot now determine that the figures reached by the trial judge were "clearly unfair or unjustly distorted by a misconception of the law or findings of fact that are contrary to the evidence." Wadlow v. Wadlow, 200 N.J. Super. 372, 382, 491 A.2d 757 (App.Div. 1985) (quoting Perkins v. Perkins, 159 N.J. Super. 243, 247, 387 A.2d 1211 (App.Div. 1978)). A sharp departure from reasonableness must be demonstrated. Ibid. When on remand the pension distribution figures are amended, the available income to each of the parties will no doubt be adjusted. Furthermore, the parties' current pay, unencumbered by the various adjustments *427 that created questions at the initial trial, might be used by the trial judge to verify whether his initial estimates of the income available to the parties was accurate. We assume that because the oldest child has completed or will soon be completing high school, the support parameters may have changed. On remand, the judge may, if warranted, correct the child support figures to reflect current conditions.
This matter is remanded to the Family Part for reconsideration in accordance with this opinion.
NOTES
[1] Defendant has a pension which would yield $545 per month in addition to Social Security benefits if she continues employment until age sixty-five. Plaintiff's expert valued this pension, reduced by the marital coverture fraction, at $4,529.78. The judge, however, determined the value was merely $2,250 and gave plaintiff a credit of fifty percent, or $1,125. While the difference claimed is small, the judge on remand should either verify that there was a credible factual basis for his valuation, or amend the judgment to reflect the correct amount. We note that the court apparently did not apply any future salary increases to defendant in computing this pension. As noted infra this was correct. It appears, however, that the pension was not valued as of the date of the filing of the complaint, but at some other date. If the valuation is materially affected, it should be recomputed. We assume, however, that the difference will be so small that such recomputation will not be necessary.

Lastly, plaintiff objects to defendant's pension being valued at age sixty-five so that the discounted value to him is quite small, while his pension was valued at age fifty-five yielding a larger discounted value. While usually the same standards are applied to both parties' pensions, in this unusual case the judge used the dates that the parties expected to retire. We take no issue with this determination.
[2] While the case was pending before this court, we remanded it temporarily in December 1994 so that the trial judge could sign a consent decree reducing child support payments to $1,150 per month because one child was residing with plaintiff.
[3] The judgment was later amended to correct the net proceeds from the sale of the house to $63,938.16 to include defendant's one-half share. The judge also stated that if plaintiff filed for bankruptcy defendant could apply for "alimony and/or equitable distribution of the balance of plaintiff's pension" less monies already received by defendant. The court also added a provision requiring plaintiff to retain defendant as a beneficiary on his life insurance for the monies owned pursuant to the judgment and to retain the children as beneficiaries until they are emancipated.
[4] As noted earlier, both sides agree that plaintiff would retire at age fifty-five, which had been considered the mandatory retirement date for State Police officers. See N.J.S.A. 53:5A-8(a). However, such a mandatory retirement date, which had been subject to an exemption from the Age Discrimination in Employment Act is now subject to this Act. The exemption was repealed as of December 31, 1993. P.L. 99-592 § 3(b) (1986). Given plaintiff's express intention to retire at fifty-five, however, the trial judge need not recompute the pension valuation employing other ages.
[5] We do not think that Bednar v. Bednar, 193 N.J. Super. 330, 333, 474 A.2d 17 (App.Div. 1984) requires any different treatment of the cost-of-living components of plaintiff's salary increases. As noted earlier, even these increments are due to the employees' collective efforts, or in the words of Bednar, the "personal industry of the party controlling the asset." Ibid. See also Scavone v. Scavone, 230 N.J. Super. 482, 491, 553 A.2d 885 (Ch.Div. 1988), aff'd, 243 N.J. Super. 134, 578 A.2d 1230 (App.Div. 1990).