851 A.2d 720 (2004)
370 N.J. Super. 486
Anthony PANETTA, Plaintiff-Appellant,
v.
Carolyn PANETTA, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 2004.
Decided July 1, 2004.
*722 Nancy C. Ferro, Ridgewood, argued the cause for appellant (Ferro and Ferro, attorneys; Ms. Ferro, of counsel and on the brief).
Allen Hantman, Denville, argued the cause for respondent (Morris & Hantman, attorneys; Mr. Hantman, on the brief).
Before Judges PRESSLER, ALLEY and PARKER.
*721 The opinion of the court was delivered by PARKER, J.A.D.
In this post-judgment matrimonial matter, we focus on two issues: the appropriate formula for calculating the marital share of plaintiff's federal pension and whether plaintiff is entitled to an offset against defendant's share of his pension for defendant's social security benefits.[1]
The parties were married in 1958 and divorced in 1994. During the marriage, plaintiff, Anthony Panetta, was initially employed in the private sector. From 1977 to 2000, he was employed by the federal government. Defendant, Carolyn Panetta, is employed by AT & T. The judgment of divorce provided for equitable distribution of the parties' pensions. It specifically stated:
Both plaintiff and defendant shall execute Qualified Domestic Relations Orders for division of plaintiff's pension with plaintiff's present employer, Department of Veterans Affairs and defendant's present employer, AT & T. Both Orders shall be based on the evaluations prepared by Pension Appraisers and dated April 5, 1994. It is understood by the parties that the evaluation of plaintiff's pension reflects an adjustment for imputed social security benefits as it is a civil service pension. This reduced valuation *723 shall be utilized for division of plaintiff's pension and the applicable Qualified Domestic Relations Order unless New Jersey Courts dictate law to the contrary prior to plaintiff's retirement.
The Pension Appraiser's Report dated April 5, 1994, valued each of the pensions as of October 1, 1993, the date the complaint was filed. Four years later, defendant moved to "amplify" the judgment and to confirm the parties' understanding of the pension distribution. Defendant also sought to amend the judgment, specifically to identify a court order approved for processing (COAP),[2] rather than a qualified domestic relations order (QDRO),[3] for distribution of the federal pension, and to apply the formula articulated in Marx v. Marx, 265 N.J.Super. 418, 627 A.2d 691 (Ch.Div.1993), to allocate defendant's share of plaintiff's federal pension.
On September 22, 1998, the parties entered into a consent order settling the motion. In the consent order, they agreed to file an amended judgment that would (1) identify plaintiff's pension order as a COAP; (2) refer to the percentage allocation of the pension; (3) provide for defendant to receive survivor benefits from plaintiff's pension, "the cost of which shall be deducted from defendant's share;" (4) utilize the Marx formula for allocation of plaintiff's pension; and (5) provide for execution of a QDRO for plaintiff's share of defendant's AT & T pension.
The amended judgment, filed on March 21, 2000, stated:
1. That the Wife, Carolyn Panetta, shall cooperate with the Husband, Anthony Panetta, as may be necessary, which includes providing the Husband with all requisite information and signatures, to allow the Husband to obtain a [QDRO] for his share of the Wife's pension with AT & T. The Husband shall be allowed to elect to receive a survivor annuity the cost of which, if such election is made, will be charged solely against the Husband's portion of the benefit.
2. The Husband, Anthony Panetta, shall notify the defendant, Carolyn Panetta, immediately upon plaintiff's notice of his retirement date and election to commence receipt of social security benefits. This notice to defendant is to allow plaintiff to enter a revised COAP which will adjust defendant's portion of the pension distribution of plaintiff's pension by decreasing defendant's portion by an amount calculated by Pension Appraiser's, Inc. to be the value of plaintiff's imputed social security benefits. A revised COAP is necessary since it is impossible to calculate that portion of plaintiff's pension attributed to a social security benefits [sic] until plaintiff's true and exact retirement date, pension benefits and social security benefits become known to plaintiff.
The amended judgment did not include the provision for defendant to receive survivor benefits from plaintiff's pension as agreed in the consent order, however.
Thereafter, the parties filed numerous motions and cross-motions regarding the valuation and distribution of the pensions. Plaintiff retired from his federal employment in May 2000 and designated his new wife as the survivor beneficiary of his federal pension, irrevocably precluding defendant *724 from the option agreed to and ordered previously.
In September 2002, a plenary hearing was conducted to determine the appropriate form of COAP. The parties' pension experts, Theodore K. Long of Pension Appraisers, Inc., for plaintiff, and William M. Troyan for defendant, testified specifically as to their differing valuations of plaintiff's federal pension and the social security offset.
On September 24, 2002, the trial judge entered an order (1) authorizing defendant to prepare a COAP in the form testified to by Troyan utilizing the Marx formula; (2) denying plaintiff's motion to have defendant's share of his federal pension reduced by an imputed social security benefit; and (3) deferring the issue of arrears in the distribution of defendant's pension to plaintiff until acceptance of the COAP. In his letter opinion dated September 24, 2002, the judge concluded "as a matter of law that [defendant's] argument with respect to imputed social security is correct" and that "it is inappropriate to make any reduction in her share of [plaintiff's] pension on account of an imputed social security benefit." The judge gave three specific reasons for his decision:
First, after the agreement was signed, but before [plaintiff's] retirement, the Appellate Division in Hayden v. Hayden, 284 N.J.Super. 418, 665 A.2d 772 (App.Div.1995) ruled that under New Jersey law it was correct for a judge to refuse to reduce the valuation of a pension by the amount of the social security benefit that the husband would have received if he had been in equivalent private employment. The Appellate Division specifically rejected the Pennsylvania decision which held otherwise, Cornbleth v. Cornbleth, 397 Pa.Super. 421, 580 A.2d 369 (1990). Id. at 425, 580 A. 2d 369. This clear statement of New Jersey law rejecting the arguments of plaintiff who, along with his expert, relied upon the Cornbleth case comes clearly within the coverage of the last sentence of paragraph 4 of the Judgment of Divorce. That is, New Jersey law did in fact dictate that the imputed social security benefit would not be used to reduce the pension valuation, and that this determination was made prior to plaintiff's actual retirement in May 2000. Second, in fact Mr. Panetta is receiving social security. He is receiving social security on the basis of his employment prior to starting with the federal government in the year 1977. A careful review of P-1, plaintiff's exhibit, shows the methodology used by the Social Security Administration to calculate social security benefits (see page 5 of P-1). The first $401 of average indexed monthly earnings yield a benefit of 90 percent of that amount or $361. The next $2,000 is multiplied by .32, and thereafter, all excess income is valued at only .15. Mr. Panetta's expert says that his hypothetical social security benefit would have been $578.26. However, it is clear that that would not be the case because Mr. Panetta is actually receiving $530 in social security benefits from his earlier employment. Because of the reduced rate applied for excess earnings, if Mr. Panetta had been employed in private employment, his social security benefit would not have been $578.26 higher. It is unfair and inequitable to reduce Mrs. Panetta's share of pension benefits by this "hypothetical social security" calculation. If he had not worked for the federal government from 1977 until his retirement, his social security benefits would not have been increased by the purported $578.26 hypothetical. Third, Mr. Panetta did not give Mrs. Panetta the opportunity to purchase the survivor benefit as had been agreed to in the *725 Consent Order. That was something that Mrs. Panetta was to receive, and she did not. Although it is now impossible to correct this, because his new wife has the benefits and the plan cannot be changed, it is fair and equitable that he not receive a credit for the imputed social security benefit.
The court expressed concern about the amount of arrearages accruing to defendant, which could exceed $25,000, resulting from the delay in entering the COAP, and invited counsel to submit supplemental briefs on the issue. On October 4, 2002, the judge issued a supplemental letter opinion indicating that plaintiff had raised a new issue in his supplemental brief, namely "that he did not receive the benefit of [defendant's] retirement benefit." The judge disregarded the new claim, stating that plaintiff was not yet entitled to any benefits from defendant's pension because defendant had not yet retired. With respect to the arrearages from the delay in distributing plaintiff's pension, the court accepted plaintiff's representation that he had the ability to pay the arrearages within forty-five days of entry of the COAP, and so ordered.
Plaintiff appealed, arguing that the trial judge erred in (1) applying the Marx formula which changed the valuation date for his pension from the date the complaint was filed, as agreed in the judgment, to the date of distribution; (2) finding that Hayden changed the law on the social security offset prior to plaintiff's retirement; (3) disallowing the social security offset; and (4) including cost of living adjustments (COLAs) in calculating arrears. Plaintiff further argues that the cumulative errors require a remand "with specific directions from this court to straighten out what has become a convoluted morass."

I
The agreement incorporated in the judgment respecting equitable distribution of the parties' pensions demonstrates a lack of appreciation by both parties and their then-counsel of the differences between public and private pensions and the nuances of deferred distribution.[4] The Pension Appraisers Report dated April 5, 1994, was of little help to the parties and their attorneys because it, too, failed to specify the differences in the pensions and failed to recognize that plaintiff's federal pension was a deferred distribution plan, the value of which could not be determined until he retired. Nor did the report recognize that it is the non-federal employee's social security benefit that may be offset against her share of the federal employee's pension. The numerous post-judgment motions were necessitated by the confusion resulting from this initial lack of understanding by the parties, their then-counsel and their expert. For that reason, we will begin our analysis with basic propositions.
The marital share of a private pension is distributed by way of a QDRO drafted in accordance with the pension plan requirements. Marx, supra, 265 N.J.Super. at 419, 627 A. 2d 691. The marital share of a federal pension is distributed pursuant to a COAP drafted in accordance with the Code of Federal Regulations. White, supra, 284 N.J.Super. at 304, 664 A.2d 1297.
Plaintiff was born on June 15, 1937. He is sixty-seven this year. He was employed in the private sector from 1953 until 1977, when he began his federal employment. He retired from his federal employment in *726 May 2000. In addition to his federal pension, he is collecting $530 per month in social security benefits from his earlier private employment. Defendant was born on December 19, 1939. She will be sixty-five this year. She began her employment with AT & T on April 18, 1982, and has not yet retired.
In the Pension Appraiser report dated April 5, 1994, plaintiff's pension was valued as of October 1, 1993, the date the complaint for divorce was filed. Plaintiff contends that when the trial judge ordered the application of the Marx formula, he changed the valuation date from October 1, 1993 to the date of plaintiff's retirement. In that contention he is correct. He is incorrect, however, in contending that the change in the valuation date will give defendant a disproportionate share of his pension.
At the September 20, 2002 hearing, plaintiff's expert, Theodore Long, acknowledged that the April 5, 1994 report calculated a hypothetical value of plaintiff's pension as of October 1, 1993, based on assumed information, as if plaintiff stopped working on that date. He acknowledged further that plaintiff's actual pension benefit could not be calculated until plaintiff retired because all of the factors included in the calculation would not be known until that time.
Defendant's expert, William Troyan, testified that Long's error was in applying his calculation to a deferred distribution, that is, a marital asset which cannot be distributed at the time of divorce. Troyan observed: "[I]t is clear that for the determination of the property interest of the former spouse the referencing benefit is the actual benefit payable to Mr. Panetta at the time of his retirement." We agree.
Beginning with Moore v. Moore, 114 N.J. 147, 553 A.2d 20 (1989), "deferred distribution" has been utilized when the "non-employee spouse does not receive any benefit until the benefits are actually paid to the employee spouse." Id. at 159, 553 A.2d 20. Marx established the formula for allocating the marital share of a deferred distribution pension. 265 N.J.Super. at 428, 627 A.2d 691. The Marx court noted that the actual pension benefit of a deferred distribution plan cannot be calculated until "the time of retirement because [it is based] upon the multiple factors of age at retirement, final average salary, number of years of service, mortality, future interest rates and the form in which it is paid." Id. at 424, 627 A.2d 691. At the September 20, 2002 hearing, Troyan testified that plaintiff's federal pension is a deferred distribution plan because it cannot be distributed to the non-federal employee spouse until the federal employee spouse retires. The Marx formula, therefore, is appropriately applied to plaintiff's pension. The formula is calculated as follows: The actual retirement benefit is multiplied by the coverture fraction and divided by two[5] to produce the marital share:
Retirement X years of employment during marriage % 2
 -----------------------------------
Benefit total years of employment
[Id. at 428, 627 A.2d 691.]
The Marx formula was approved and reiterated in Reinbold v. Reinbold, 311 N.J.Super. 460, 466-67, 710 A.2d 556 (App. Div.1998), and again in Linek v. Korbeil, 333 N.J.Super. 464, 472, 755 A.2d 1229 (App.Div.), certif. denied, 165 N.J. 676, 762 A.2d 657 (2000). Linek is directly on *727 point. There, the parties were addressing a similar error in the valuation of a deferred distribution pension. 333 N.J.Super. at 468, 755 A.2d 1229. We noted that an evaluation submitted at the time of the divorce in 1981 erroneously valued the deferred distribution pension as of the date the divorce complaint was filed. Id. at 472, 755 A.2d 1229. The error in the valuation date resulted in an "improperly specific dollar amount to be paid to plaintiff at some future date." Id. at 472, 755 A.2d 1229. We considered it "of no consequence" that "the valuation disparity ... came about because an error was made in the pension valuation submitted to the court at the time of the divorce trial." Id. at 472, 755 A.2d 1229.
We reject plaintiff's argument that the change in valuation date gives defendant a greater share of his pension than she is entitled to receive. It is the application of the coverture fraction that adjusts the actual pension benefit to the marital share. "As we observed in Risoldi v. Risoldi, 320 N.J.Super. 524, 544, 727 A.2d 1038 (App. Div.), [certif. denied, 161 N.J. 335, 736 A.2d 528 (1999) ] `[a]pplication of the coverture fraction, applied at the time the benefits convert to pay status at retirement, will assure [that the employee spouse] maintains the fruits of his post-divorce labor.'" Menake v. Menake, 348 N.J.Super. 442, 451, 792 A.2d 448 (App. Div.2002).
In his brief, plaintiff engages in a lengthy discussion of the numerous post-judgment motions, orders and representations of various individuals regarding the valuation of his pension. The problem here is that from its inception, the valuation was faulty and it was not corrected until the trial judge conducted the plenary hearing at which he carefully questioned both experts, considered the arguments of counsel and squarely addressed the issue in his written decision.
Plaintiff contends that through all of the post-judgment motions and discussions he did not understand the Marx formula or the consequence of its application. That is not surprising given the obvious lack of understanding by the then-attorneys and pension appraiser in formulating the agreement incorporated into the judgment. Nonetheless, the errors made in the April 5, 1994 report and incorporated in the judgment of divorce and subsequent orders must now be corrected. The case laweven in 1994 clearly indicated the appropriate method for valuing the marital share of a deferred distribution pension. See Moore, supra, 114 N.J. at 159, 553 A.2d 20; Marx, supra, 265 N.J.Super. at 426, 627 A. 2d 691. The trial judge correctly ordered defendant to prepare the COAP in accordance with the Marx formula. The Marx formula balances the marital share of the actual retirement benefit by application of the coverture fraction. Indeed, that is the express purpose for using the Marx formula in calculating the marital share of a deferred distribution pension.

II
Plaintiff next argues that the trial judge erred in denying him the social security offset agreed to by the parties in the judgment of divorce.
The offset issue arises because federal civil service employees do not participate in social security, that is, they do not contribute to social security during their federal employment and do not receive social security benefits attributable to their federal employment. White, supra, 284 N.J.Super. at 306, 664 A. 2d 1297. While federal pensions are distributable, social security benefits are not. 42 U.S.C.A. § 407(a); Hayden, supra, 284 N.J.Super. at 425, 665 A.2d 772.
The question of whether a federal employee is entitled to an offset to balance *728 retirement benefits with a non-federal employee was addressed in White, where the plaintiff wife was a private employee entitled to social security and the defendant husband, a life-long federal employee, was not. Defendant argued that "because he [was] not entitled to receive social security under his federal pension, plaintiff's share of his pension should be offset for 50% of plaintiff's social security benefit." 284 N.J.Super. at 304, 664 A.2d 1297. The defendant also argued that the offset should be calculated immediately upon his retirement even though plaintiff would not be eligible to receive her social security benefits until almost ten years later. The issues, therefore, were whether the defendant was entitled to an offset at all and, if so, whether the offset should be made prior to the plaintiff's receipt of social security benefits. Ibid.
The court noted that the "[d]efendant's non-participation in social security enabled the parties to enjoy a greater disposable income during the marriage" and that the "defendant will receive a substantially greater pension benefit [from his federal employment] to compensate for his lack of social security." Id. at 306, 664 A.2d 1297. "The larger [pension] benefit will also be enjoyed by both parties because they will share it equally, subject to the coverture fraction." Ibid. The court held that since the plaintiff contributed to social security during the marriage, the defendant who did not, was entitled to an offset against her share of his federal pension. Ibid.
In calculating the amount of the offset, the Marx formula is applied to the private employee's actual social security benefit based upon her lifetime earnings. That amount is then deducted from her share of the federal employee's pension. Ibid. With respect to the timing of the offset, the court correctly determined that the amount of plaintiff's social security benefit could not be calculated until she collected it because it is based upon the number of years of employment, the income earned in the last years of employment and plaintiff's age at the time of collection. Id. at 306, 664 A.2d 1297. Thus, the court held that the offset should not commence until plaintiff actually begins collecting social security. In other words, the White court treated social security benefits like any other deferred distribution subject to the Marx formula.
In reviewing the social security provision incorporated in the judgment before us, it becomes obvious that the offset was misconstrued by the pension appraiser when he deducted from defendant's share of plaintiff's pension the imputed social security benefit plaintiff would have acquired during his years of federal employment. It is defendant's social security benefit, subject to the Marx formula, that should be offset against her share of plaintiff's federal pension. In other words, a federal employee may be entitled to an offset against a private employee's share of the federal pension because only the private employee would benefit from social security earned during the marriage. Clearly, the purpose of the offset is to balance the retirement benefits accrued by each of the parties during the marriage.
The situation before us differs from White in that, here, in addition to his federal employment, plaintiff was privately employed from 1953 to 1977, entitling him to a $530 per month social security benefit which he is actually receiving. Defendant maintains that plaintiff is not entitled to any pension offset based on the sentence in the divorce judgment stating that the offset was subject to any change in the law prior to plaintiff's retirement. Defendant argues that Hayden changed the law of pension offsets before plaintiff retired.
We disagree with defendant's contention that Hayden changed the law of *729 pension offsets. It did not. Rather, in Hayden we rejected the claim of a State Police lieutenant[6] for an offset based on his imputed social security benefits, just as we reject plaintiff's claim for imputed benefits. We are, nevertheless, left with the question of how to balance the benefits earned by a spouse who participated in social security all of her working life with those of a spouse who participated for only a portion of his working life. The fairest and most equitable means is to deduct plaintiff's actual social security benefit, $530 per month, from defendant's actual social security benefit when she begins to collect it, and then offset the remainder, subject to the Marx formula, against defendant's share of plaintiff's pension. In other words, the partial participant's actual social security benefit is deducted from the full participant's benefit and the remainder, subject to the Marx formula, is offset against the full participant's share of the partial participant's pension.
For equitable reasons, however, plaintiff is not entitled to the offset here. The trial judge properly declined to apply the offset to plaintiff's federal pension because plaintiff failed to comply with the parties' agreement, memorialized in the consent order of September 22, 1998. The consent order provided that "defendant is to receive survivor benefits, the cost of which shall be deducted from defendant's share." When he retired, plaintiff designated his new wife as the survivor beneficiary, irrevocably precluding defendant from that benefit.
Plaintiff blames this occurrence on defendant, arguing that "while plaintiff's attorney did include this provision in several proposed documents ... defendant and her attorney virtually ignored the provision and took no steps to ensure that a COAP would be entered prior to plaintiff's retirement including such a provision." We need not belabor our prior comments respecting prior counsel. Nonetheless, we agree with the trial judge's denial of the offset in his equitable distribution of the overall retirement benefits, for the reason that plaintiff deprived defendant of the value of the asset to which she was entitled.

IV
Plaintiff argues that the trial judge erred in allowing defendant a share in his pension COLAs. He maintains that an order entered on May 13, 2002 expressly found "that Ms. Panetta is not entitled to receive a COLA on her share of Mr. Panetta's pension." On this point, we agree with plaintiff.
It is well settled that post-retirement COLAs are subject to equitable distribution to the extent they are "attributable to the portion of the pension that was earned during the marriage." Risoldi, supra, 320 N.J.Super. at 536, 727 A.2d 1038. Here, the divorce judgment is silent on the issue of COLAs. In the May 13, 2002 order, the judge balanced the equities and determined that, since plaintiff would not receive a share of defendant's COLAs, defendant was not entitled to COLAs on her share of his pension. We will not disturb that determination in the May 13, 2002 order. Consequently, we reverse that portion of the trial judge's decision to enter the COAP drafted by defendant to the extent it includes the COLAs. We remand for revision of the COLA provision consistent with the May 13, 2002 order.

V
Plaintiff next argues that the trial judge erred in calculating the arrears due to defendant from the delay in distributing her share of plaintiff's pension because of the lengthy dispute over the form of the *730 COAP. Plaintiff's argument focuses on his contention that the trial judge erred in moving the valuation date of his pension from 1993 to 2000 resulting in defendant receiving a greater share, thereby increasing the amount of arrears owed to her.
We have already discussed at length the erroneous valuation date in the divorce judgment and need not repeat our reasoning here. Plaintiff has not demonstrated financial hardship in complying with the order, and we are satisfied that, under all of the circumstances presented, the trial judge correctly ordered plaintiff to pay the arrears within forty-five days of entry of the COAP.
Plaintiff further maintains that the arrearages are somehow mitigated by the fact that he did not receive his share of defendant's pension immediately after the divorce in 1994. In his letter opinion dated October 4, 2002, addressing the issue of arrears, the trial judge stated:
With respect to Mr. Panetta's claim that he did not receive the benefit of Mrs. Panetta's retirement benefit, that has not been argued up to this point. Moreover, I am confused by that argument because Mrs. Panetta indicated she has not yet retired. Therefore, it would not appear that Mr. Panetta has been denied any benefit by the delay in the entry of the Order on her pension. In any event, if he is somehow prejudiced by that, he will need to make an appropriate application to deal with that as that issue has not been raised as part of the motion and the plenary hearing.
We agree with the trial judge. Nothing in the record before us leads us to conclude that defendant's pension was distributable prior to her retirement. From all of the evidence presented, it appears that defendant's AT & T pension is a deferred distribution plan,[7] as is plaintiff's federal pension. If there is evidence to the contrary, plaintiff did not present it to the court below and has not presented it to us. We find no merit in plaintiff's position.

VI
Plaintiff's final argument is that "[t]he multitude of errors made in this case call out for a remand with specific directions from this court to straighten out what has become a convoluted morass." The record before us amply demonstrates that it had become a "convoluted morass" as a result of the improperly drafted judgment, the incorrect valuation in the April 5, 1994 pension appraisal, and the inartfully drafted consent order and amended judgment. The trial judge recognized the confusion and properly ordered the plenary hearing with the experts for both parties testifying. Our review of the record of that hearing convinced us that the judge diligently pursued each of the issues with both experts and both counsel in an effort to clarify what was done previously and what should be done to resolve the issues fairly, equitably and in accordance with the law. In our view, the judge correctly concluded that the Marx formula must be applied to plaintiff's federal pension to determine defendant's marital share, and that plaintiff is not entitled to a social security offset for equitable reasons. Moreover, his order directing plaintiff to pay the arrears within forty-five days of entry of the COAP is reasonable under the circumstances presented.
Affirmed in all respects, except for the COLA provision in the COAP which is *731 reversed and remanded for revision in accordance with this opinion.
NOTES
[1] Plaintiff participated in the federal civil service employees' pension system. Chapter 83, 5 U.S.C.A. §§ 8301 to 8351. Federal employees participating in the pension system do not contribute to or receive social security benefits. White v. White, 284 N.J.Super. 300, 303, 664 A.2d 1297 (Ch.Div.1995), aff'd o.b. 309 N.J.Super. 139, 706 A.2d 1109 (App.Div. 1996).
[2] A COAP is the form of order designated for distribution of the marital share of a federal pension.
[3] A QDRO is the form of order designated for distribution of the marital share of a private pension.
[4] We note that the parties' present counsel are not the same attorneys who represented them at the time of the divorce.
[5] Assuming the non-employee spouse is receiving half of the pension earned during coverture.
[6] As with federal employees, State Police members do not participate in social security.
[7] There has been no appeal of the valuation date of defendant's AT & T pension, and we will not address it other than to say that if it is a deferred distribution plan, as all the evidence indicates, it too was incorrectly valued in the April 5, 1994 pension appraisal, and should be valued at the time of retirement and distributed in accordance with the Marx formula, as is plaintiff's federal pension.