**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4433-17T4

LINDA L. FELTON,

      Plaintiff-Appellant,

v.

GARY M. FELTON,

      Defendant-Respondent.

_____

Submitted March 19, 2019 – Decided August 23, 2019

Before Judges Rothstadt and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0758-16.

Richard R. Mazzei, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Linda L. Felton appeals from two Family Part orders entered on April 20, 2018. One order held

plaintiff in violation of litigant's rights for refusing to sign a proposed Qualified Domestic Relations Order (QDRO) and Court Order Approved for Processing (COAP)[1] regarding the equitable distribution of defendant Gary M. Felton's military pension that was in pay status. The second order was the QDRO that the Family Part entered on the same date. On appeal, plaintiff contends that the orders from which she appeals were entered in error because they were based upon the motion judge incorrectly relying on a method for distribution that was contrary to the express provisions of the parties' Property Settlement Agreement

---

[1] "[A] QDRO [is defined] as a domestic relations order 'which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and with respect to which the requirements of subparagraphs (C) and (D) are met.'" Johnson v. Johnson, 320 N.J. Super. 371, 381 (App. Div. 1999) (quoting 29 U.S.C.A. § 1056(d)(3)(B)(i)). "Most often, a [QDRO] is used to transfer the interest to the non-employee spouse." Barr v. Barr, 418 N.J. Super. 18, 35 n.3 (App. Div. 2011). It requires the distribution of a "'pension plan . . . in accordance with the coverture fraction, a portion of the periodic pension benefit to the non-pensioner spouse[,]' to assure the direct payment to the non-employee spouse and that each party would bear the tax consequences attributable to his or her respective share." Ibid. (second alteration in original) (quoting Claffey v. Claffey, 360 N.J. Super. 240, 257-58 (App. Div. 2003)).

A COAP is an order that provides for the distribution of "[t]he marital portion of a federal pension . . . which must be drafted in accordance with the Code of Federal Regulations." White v. White, 284 N.J. Super. 300, 304 (Ch. Div. 1995).

A-4433-17T4

(PSA) relating to defendant's pension. We agree and vacate both orders and remand the matter for recalculation of the amount to which plaintiff is entitled.

The facts are taken from the motion record. Prior to his marriage to plaintiff, defendant joined the military on June 28, 1977. The parties were married on February 18, 1983, defendant retired on October 2, 2014, and plaintiff filed a Complaint for Divorce on December 28, 2015. In October 2016, the parties signed their PSA and on May 22, 2017, the same day their Final Judgment of Divorce (JOD) was entered, they amended their PSA with a one-page addendum. The PSA as amended was incorporated into the JOD.

Paragraph 5.4 of the PSA addressed defendant's pension. It stated the following:

> The parties further agree Husband has a regular VA pension, [actually a pension with the Army Reserve] and a disability pension as a result of post-traumatic stress disorder and other physical ailments associated with husband's prior deployment. The parties agree that Husband's regular pension through the VA, and not his disability pension, will be divided via [QDRO] consistent with the formula set forth in Marx v. Marx[, 265 N.J. Super. 418 (Ch. Div. 1993)]. The coverture fraction for purposes of establishing Wife's entitlement to Husband's pension shall be from the date of marriage [February 18, 1983] to the date of the filing of the Complaint for Divorce, i.e., December 28, 2015. As Husband's pension is presently in pay status at this point in time, Husband will continue to pay Wife consistent with the prior status quo that has existed up

3

until the execution of this [PSA]. Upon Husband being advised that his pension is form[ally] divided, Husband will no longer pay Wife directly, rather, Wife will receive her pension payments directly from the Federal government. Husband's disability pension will not be divided.

[Emphasis added.]

The PSA's addendum required defendant to obtain an order for his military pension's distribution by July 1, 2017. When the order was not obtained, plaintiff filed a motion to enforce litigant's rights and on December 8, 2017, the court ordered that defendant's military pension be divided in accordance with the parties' PSA and that the transfer of assets to which plaintiff was entitled under the PSA be completed within fifteen days. The transfer did not occur within that time.

Thereafter, the parties entered into a dispute over the terms of a proposed form of COAP. The proposed order was prepared by Pension Appraisers, Inc. (PAI). Rather than calculating plaintiff's share of defendant's pension in accordance with the PSA, PAI used a calculation based upon instructions it received from defendant's attorney that were inconsistent with the PSA. Those instructions directed that plaintiff's share not be calculated as provided in the

4

PSA, but rather using a percentage that was based upon a ratio of military points[2] earned during the marriage to the total points accumulated by defendant at the time of his retirement. According to counsel's instructions, PAI used an option selected by counsel for the calculation of plaintiff's share that awarded her fifty percent of the amount calculated using points. Counsel selected that option even though he could have selected an option that calculated plaintiff's share based upon a "percentage of the total accrued benefit as of the Date of Retirement," or for payment of a fixed dollar amount not to "exceed 50% of [defendant's] Disposable Retire[ment] Pay." Based on the calculation choice as selected by defendant's counsel, plaintiff would receive thirty-five percent of defendant's pension income, instead of the forty-two and one-half percent to which she claimed she was entitled.

When plaintiff would not agree to the proposed order's terms, defendant filed a motion to enforce litigant's rights, seeking among other relief, that plaintiff be compelled to sign the proposed COAP and QDRO. Plaintiff filed a cross-motion for the same relief, seeking to compel defendant to sign an

---

[2] For military personnel, "the formula used to calculate [their] retired pay benefits considers a military member's rank pay at retirement and years of service. 10 U.S.C.A. § 12739(a)." Barr, 418 N.J. Super. at 36 (emphasis added).

alternate COAP awarding plaintiff forty-two and one-half percent of defendant's pension. According to plaintiff, her calculation was based upon the PSA's formula for distribution of the pension. The forty-two and one-half percent was the result of applying the ratio of the length of the marriage until the filing of the complaint, less the fourteen months defendant was in retirement status (380 months) to the time period that the parties were married and defendant was active in the service (447 months), which amounted to eighty-five percent of the time. Therefore, plaintiff claimed she was entitled to one half of eighty-five percent of the payment, or forty-two and one-half percent.

The motion judge granted defendant's motion and denied plaintiff's, setting forth her reasons in her April 20, 2018 order. The judge found that "[w]hile a benefit calculation for a standard pension ends with the dictates of Marx [which would award plaintiff forty-two and one-half percent of defendant's pension], federal pensions are subject to a second step that involves the calculation of points," which would award plaintiff thirty-five percent of defendant's pension. The judge concluded "Defendant's calculation of Plaintiff's VA pension entitlement, i.e. 38% of Defendant's pension, comports with the terms of the PSA, which require that it be calculated 'consistent with the formula set forth in Marx' and further defined in Barr." Any claim by plaintiff that she

was entitled "to more than that calculation [was] untenable, as it is contrary to federal law." This appeal followed.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998); see also Gnall v. Gnall, 222 N.J. 414, 428 (2015). We accord deference to the family courts due to their "special jurisdiction and expertise" in family law matters. Cesare, 154 N.J. at 413. The family court's findings are binding so long as its determinations "are supported by adequate, substantial, credible evidence." Id. at 411-12. We will not disturb the factual findings and legal conclusions unless convinced they are "so manifestly unsupported by or inconsistent" with the evidence presented. Id. at 412. "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark'" should we interfere to "ensure that there is not a denial of justice." Gnall, 222 N.J. at 428 (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

However, challenges to legal conclusions, as well as a trial judge's interpretation of the law, are subject to de novo review. Estate of Hanges v. Metro Prop. & Cas. Ins. Co., 202 N.J. 369, 382 (2010).

> Although we are obliged to defer to the factual findings and discretionary decisions made by the Family Part due to the specialized nature of the court, a question regarding the interpretation or construction of a contract is a legal one and our review is plenary, with no special deference to the trial judge's interpretation of

the law and the legal consequences that flow from the established facts.

[Barr, 418 N.J. Super. at 31 (citation omitted).]

At the outset, we emphasize a court's obligation to enforce matrimonial PSAs incorporated into JODs absent limited circumstances. New Jersey has a strong public policy favoring the enforcement of PSAs. Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995). These agreements are approached with the presumption that they are valid and enforceable, and they will be enforced "if they are fair and equitable." Ibid. As our Supreme Court recently explained:

> "An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citations omitted). According to those principles, we must "discern and implement the common intention of the parties." Ibid. Therefore, our role when interpreting marital settlement agreements is to "consider what is 'written in the context of the circumstances' at the time of drafting and to apply 'a rational meaning in keeping with the expressed general purpose.'" Sachau v. Sachau, 206 N.J. 1, 5-6 (2011) (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)). In doing so, "the words of an agreement are given their 'ordinary' meaning." Flanigan v. Munson, 175 N.J. 597, 606 (2003) (quoting Shadow Lake Vill. Condo. Ass'n v. Zampella, 238 N.J. Super. 132, 139 (App. Div. 1990)). Therefore, where the parties' intent "is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn, 225 N.J. at 45.

[Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511-12 (2019).]

Applying these guiding principles, it is clear that the parties contemplated the distribution of defendant's military pension to follow the requirements of Marx. The motion judge recognized as much, but we conclude she erroneously expanded the parties' agreement to be subject to an additional provision under Barr for which there is no legal support.

"Marx established the formula for allocating the marital share of a deferred distribution pension." Panetta v. Panetta, 370 N.J. Super. 486, 496, 498 (App. Div. 2004) (concluding "[t]he trial judge correctly ordered [federal-employee] defendant to prepare the COAP in accordance with the Marx formula"). The Marx formula is based upon the fact "the actual pension benefit of a deferred distribution plan cannot be calculated until 'the time of retirement because [it is based] upon the multiple factors of age at retirement, final average salary, number of years of service, mortality, future interest rates and the form in which it is paid.'" Id. at 496 (alteration in original) (quoting Marx, 265 N.J. Super. at 424).

The formula, which can be applied to a federal pension to determine the value of a non-federal employee spouse's interest in her federal-employee spouse's pension, states the following:

9

A-4433-17T4

The actual retirement benefit is multiplied by the coverture fraction and divided by two to produce the marital share:

> Retirement × years of employment during marriage ÷ 2
>
> Benefit total years of employment

[Ibid. (quoting Marx, 265 N.J. Super. at 428) (emphasis added).]

It is well-established that this coverture fraction can be employed to determine the portion of a marital asset that is subject to equitable distribution. Barr, 418 N.J. Super. at 34. The coverture fraction is

> the proportion of years worked during the marriage to total number of years worked. The numerator represents that portion of the benefit, enhanced or not, that was "legally and beneficially acquired" during the marriage. The denominator is the total number of years worked up to retirement. The coverture fraction insures that the equitable distribution pot includes only that portion of the working spouse's labor which constitutes a "shared enterprise." It also assures the employee spouse the benefits of his or her pre and post coverture labors.
>
> [Eisenhardt v. Eisenhardt, 325 N.J. Super. 576, 580-81 (App. Div. 1999) (citations omitted).]

"[T]he application of the coverture fraction . . . adjusts the actual pension benefit to the marital share." Panetta, 370 N.J. Super. at 497 (quoting Risoldi v. Risoldi, 320 N.J. Super. 524, 544 (App. Div. 1999)). Its application "at the time

the benefits convert to <u>pay status</u> at retirement, will assure [that the employee spouse] maintains the fruits of his [pre- and ]post-divorce labor." <u>Ibid.</u> (alteration in original) (quoting <u>Menake v. Menake</u>, 348 N.J. Super. 442, 451 (App. Div. 2002) (emphasis added)). "The <u>Marx</u> formula balances the marital share of <u>the actual retirement benefit</u> by application of the coverture fraction. Indeed, that is the express purpose for using the <u>Marx</u> formula in calculating the marital share of a deferred distribution pension." <u>Id.</u> at 498 (emphasis added).

In <u>Barr</u>, we addressed the defendant's claim that the trial court erred by awarding to the plaintiff a portion of the "increases [in the defendant's military pension benefits] resulting from his post-judgment, pre-retirement promotion." <u>Barr</u>, 418 N.J. Super. at 28. In that case, we vacated the trial judge's determination that the plaintiff had an interest in the "pension increases" and remanded for a plenary hearing. <u>Id.</u> at 29.

In <u>Barr</u>, at the time of the parties' divorce, the defendant had completed eleven years on active duty. The parties' PSA awarded the plaintiff one-half of the defendant's military pension "attributable to his 11 years in the military" when he began to receive them. <u>Id.</u> at 37. The PSA "included no specificity as to the applicable formula to calculate or the vehicle used to deliver plaintiff's

interest." Ibid. After the divorce, the defendant entered the Air Force reserves, which service enhanced the value of his pension benefit. Id. at 29.

A dispute arose as to the plaintiff's entitlement to the enhanced payments when the federal agency responsible for issuing payments directly to plaintiff asked for "the parties' certifications stating the percentage of defendant's retired pay agreed to be paid to plaintiff each month. When plaintiff asked defendant to certify she was entitled to forty-two percent of his disposable retirement pay, he declined." Id. at 30. As noted, the trial judge agreed with plaintiff but we reversed.

In reaching our decision, we reviewed the unique "nature of and methodology used to compute military pensions." Id. at 36. We explained as follows:

> First, unlike most pensions, the plan is non-contributory—the service member makes no contribution toward his or her pension. Second, a service member's pension rights are not vested until the requisite years of service are reached, noting that a retired officer at all times remains a member of the military, subject to recall to active duty. McCarty v. McCarty, 453 U.S. 210, 222 (1981) (citations omitted). See also 10 U.S.C.A. § 802(a)(4). Third, the formula used to calculate retired pay benefits considers a military member's rank pay at retirement and years of service. 10 U.S.C.A. § 12739(a). Specifically, each service member receives points for each day of military service: one point for each day of active military

12

service and two points for each day of reservist duty. 10 U.S.C.A. § 12732(a)(2)(A)(i) and (ii). Additional points accrue based on the completion of certain training, drills and funeral honors duty. The <u>actual member's benefit</u> is the product of the base pay for the rank achieved at retirement and two-and-one-half percent of the points representing the years of service credited, and may not exceed seventy-five percent of the base pay upon which it is based. 10 U.S.C.A. § 12739(a) and (c).

[<u>Id.</u> at 36 (emphasis added).]

We then considered the language used by the parties in their PSA to address the calculation of the plaintiff's interest and concluded that the language was ambiguous as it was susceptible to two different meanings. <u>Id.</u> at 37. We remanded the matter for a determination of what the parties intended and because we concluded that "there are some extraordinary post-judgment pension increases that may be proven to be attributable to post-dissolution efforts of the employee-spouse, and not dependent on the prior joint efforts of the parties during the marriage." <u>Id.</u> at 41. In those instances, those "sums must be excluded from equitable distribution and the application of the coverture fraction may be insufficient to accomplish this purpose." <u>Ibid.</u>

None of the issues raised in <u>Barr</u> are similar to the issue here. First, there was no issue about the parties' PSA in this case clearly indicating that defendant was in pay status at the time of the PSA and further that the formula in <u>Marx</u>

13                                                                                          A-4433-17T4

was to be applied to his payment. Second, there was no issue regarding any enhancement to defendant's pension payment because he was already in pay status, having just retired from service before the parties divorced.

Moreover, contrary to the motion judge's conclusion here, in the face of an express agreement to the contrary, the military points system is used to calculate the actual amount of a military pensioner's benefit, not the portion to which the non-federal employee spouse is entitled from that amount. See 10 U.S.C. § 12739 ("Computation of retired pay"). Distribution of that amount in a state court divorce proceeding is controlled by state law. See 10 U.S.C. § 1408(c)(1) ("a court may treat disposable retired pay payable to a member . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court").

Applying our state's law here, and contrary to the motion judge's conclusion, there was no second step applicable to the calculation of plaintiff's share of defendant's retirement benefit, once his benefit had been calculated in accordance with federal law. Stated differently, the first step in the process was the calculation of defendant's retirement benefit using the military point system, and the second step was the application of the Marx formula to that amount as agreed to by the parties in the PSA.

14                                                                    A-4433-17T4

The orders under appeal are vacated and the matter is remanded to the Family Part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4433-17T4